STATE OF KANSAS, *Appellant,* v. CARROLL WILLIAM McCLANAHAN, *Appellee.*

No. 46,963

STATE OF KANSAS, *Appellant,* v. LARRY DEAN TORRENCE, *Appellee.*

(510 P. 2d 153)

Opinion filed May 12, 1973.

*J. J. B. Wigglesworth,* assistant district attorney, argued the cause, and *Vern Miller,* attorney general, and *Margaret Jordan,* district attorney, were with him on the briefs for the appellant.

*Howard S. Levitan,* of Prairie Village, argued the cause, and *John W. Gilliford,* also of Prairie Village, was with him on the brief for Carroll William McClanahan, appellee, and *Bernis G. Terry,* of Olathe, was on the brief for Larry Dean Torrence, appellee.

The opinion of the court was delivered by

FROMME, J.: The present appeals were perfected by the state upon questions reserved relating to an identical instruction given in two separate criminal cases.

Carroll William McClanahan was acquitted by a jury of the offense of grand theft as defined in K. S. A. 1972 Supp. 21-3701 (*a*). Larry Dean Torrence was acquitted by a jury of the offense of burglary as defined in K. S. A. 1972 Supp. 21-3715. Separate ap-

peals were filed in this court and then consolidated on a stipulation by the parties that the questions are identical, and a decision in one case will control the other. Regardless of our decision here the defendants cannot again be placed in jeopardy. We believe an answer to the question is of general importance to the administration of criminal justice in this state.

The instructions which were offensive to the state are identical in wording in both cases. The instruction appears to have been copied verbatim from pattern jury instructions for use in criminal proceedings prepared by a committee sponsored by the Judicial Council of Kansas. (See PIK Criminal 51.03.) Instruction No. 1 as given reads as follows:

"It is presumed that juries are the best judges of fact. Accordingly, you are the sole judges of the facts in this case.

"I think it requires no explanation, however, that judges are presumed to be the best judges of the law. Accordingly, you must accept my instructions as being correct statements of the generally accepted legal principles that apply in a case of the type you have heard.

"The order in which the instructions are given is no indication of their relative importance. You should not single out one or more instructions and disregard others but should construe each one in the light of and in harmony with the others.

"These principles are intended to help you in reaching a fair result in this case. You should give them due respect. Moreover, justice will ordinarily be done by applying them as a whole to the facts which you find have been proven. You should do just that if, by doing so, you can do justice in this case.

"Even so, it is difficult to draft legal statements that are so exact that they are right for all conceivable circumstances. Accordingly, you are entitled to act upon your conscientious feeling about what is a fair result in this case and acquit the defendant if you believe that justice requires such a result.

"Exercise your judgment without passion or prejudice, but with honesty and understanding. Give respectful regard to my statements of the law for what help they may be in arriving at a conscientious determination of justice in this case. That is your highest duty as a public body and as officers of this court."

When the instruction was proposed to be given to the juries by the trial court, the defendants by their attorneys stated in open court they had no objection.

The state objected to the instruction and argued it was highly prejudicial. The state made the following specific objections:

". . . [I]t is not the correct statement of the law, it allows the jury to disregard all of the other instructions that the Court gives them, it is against the whole worldly legal process of conducting a trial, of letting the jurors only determine the questions of fact, it is allowing them to make determinations as to questions of law, and it is allowing them to *excede* their proper province. . . ."

On appeal the state contends this instruction, and more specifically the last three paragraphs of the instruction, is contrary to Kansas law and deprives the state of a fair and impartial trial by jury by directing the jury to act upon its own conscientious feeling about what is a fair result regardless of the rules of law stated in the other instructions. In other words the instruction directs the jury that it may nullify the rules of law given by the court if it believes justice requires such a result.

In examining the question presented we must keep in mind that instructions to a jury are to be considered as a whole and in their entirety, and each instruction is to be considered in connection with all other instructions given in the case. Portions of the instructions should not be taken out of context if as a whole they appear to adequately cover the law of the case. (*Schroeder v. Richardson,* 196 Kan. 363, 411 P. 2d 670; *Thompson v. Norman,* 198 Kan. 436, 424 P. 2d 593; *State v. Jerrel,* 200 Kan. 415, 421, 436 P. 2d 973.)

The traditional concept that the jury is required to abide by the instructions given by the court, even though it might believe the instructions inappropriate in the particular case, is embodied in the instruction set forth in PIK Criminal 51.02; it has generally been given in this state. The usual instruction which has been given reads as follows:

"It is my duty to instruct you in the law that applies to this case and it is your duty to follow all of the instructions. You must not single out one or more instructions and disregard others. You should construe each instruction in the light of and in harmony with the other instructions, and you should apply the instructions as a whole to the evidence. You should decide the case by applying the law to the facts as you find them. The order in which the instructions are given is no indication of their relative importance." (PIK Criminal 51.02.)

Kansas has long recognized the diverse functions of the court and the jury, and in the early history of the criminal law of this state this court said:

". . . [T]he jury are the exclusive judges of the facts; but not so with the questions of law that are involved. In those cases it is the duty of the court to instruct the jury and decide for them all questions of law that properly arise in the case; and it is incumbent upon the jury to apply the law so given to the facts of the case, and conform their verdict and decision to the instructions. . . ." (*State v. Verry,* 36 Kan. 416, 419, 13 Pac. 838.)

This conception of the diverse functions of court and jury appears in the Kansas code of criminal procedure, effective July 1, 1970, in K. S. A. 1972 Supp. 22-3403 (3) which provides: "When the

trial is to a jury, questions of law shall be decided by the court and issues of fact shall be determined by the jury."

This same conception is inherent throughout our statutory procedural law. Enforcement of the rules of law is generally considered to be for the protection of an accused. Questions arising during a trial on materiality, relevance and competency of evidence are questions of law to be determined by the court (K. S. A. 60-401 *et seq.*, as amended, K. S. A. 1972 Supp. 22-3415). The court must determine whether confessions, admissions and seized evidence are to be suppressed or admitted as evidence (K. S. A. 1972 Supp. 22-3215, 22-3216). K. S. A. 1972 Supp. 22-3414 (3) relating to instructions provides:

"(3) At the close of the evidence or at such earlier time during the trial as the judge reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The judge shall instruct the jury at the close of the evidence before argument and the judge may, in his discretion, after the opening statements, instruct the jury on such matters as in his opinion will assist the jury in considerating the evidence as it is presented.

"The court shall pass upon the objections to the instructions and shall either give each instruction as requested or proposed or refuse to do so, or give the requested instruction with modification. All instructions given or requested must be filed as a part of the record of the case.

"The court reporter shall record all objections to the instructions given or refused by the court, together with modifications made and the rulings of the court.

"No party may assign as error the giving or failure to give an instruction unless he objects thereto before the jury retires to consider its verdict stating distinctly the matter to which he objects and the grounds of his objection unless the instruction is clearly erroneous. Opportunity shall be given to make the objections out of the hearing of the jury."

Clearly this statute acknowledges that the function of the trial court is to determine the applicable law of the case and to preserve a record thereof for appellate review. With the diverse functions of the court and jury so firmly entrenched in the law of this state, what can be the purpose of this proposed alternative instruction published as PIK Criminal 51.03? The footnotes on use by the committee on pattern instructions shed some light on this question. Following PIK Criminal 51.03 it is said:

"The Committee recommends that this instruction not be given over the objection of the defendant. The reason for this is that to do so could result in a defendant being convicted without the statutory elements being proven.

"Maryland recognizes that in criminal trials the jury is the judge of both the facts and the law. In any state, the jury may acquit in complete disregard

of the instructions. The above instruction is thus perhaps a more honest statement as to the binding effect of instructions than the conventional instruction, PIK 51.02, Consideration and Binding Application of Instructions.

"Arguably, the above instruction should bring into play the underlying value of trial by jury: The application of community conscience. If extenuating circumstances make an otherwise culpable act excusable, a jury should feel empowered to so find. Community standards are more apt to be applied if the jurors are told they are free to do what, overall, seems right to them."

Our attention is immediately drawn to the statement by the committee that the instruction should not be given over the objection of the defendant for the reason that to do so could result in a defendant being convicted without the statutory elements of the crime being proven. Assuming this is correct the defendant would have nothing to lose by consenting to the instruction. If the instruction was given and he was acquitted he would be free of the charge. If he was convicted he could promptly appeal and show that certain of the statutory elements of the crime had not been established. Jeopardy would have attached and he would be free of the charge. A fair and impartial trial demands that standards of fairness and impartiality be applied equally to the rights of the accused and of the state.

In *State v. Doyle*, 201 Kan. 469, 441 P. 2d 846, this court set aside a conviction of murder when proof of the crime was lacking. At page 484 and 485 of the reported opinion it was said:

". . . Our law recognizes that the jury shall be the exclusive judge of all material questions of fact. But upon the question whether there was present any evidence whatever of a particular material fact, the jury is not the exclusive judge; the law requires that the court determine that. [Citations omitted.] Upon this phase of the case, it is the duty of this court to determine whether there was evidence upon each material fact, necessary for a legal conviction. [Citations omitted.]"

Our whole system of criminal law is based upon rules of law for the protection of the accused and especially should this be true when the charge is a heinous crime. Without restraints being placed upon a jury by our system of jurisprudence the conscience of a jury in a case which causes public outrage might well reflect a lack of rationality rather than a proper display of community conscience. In such cases the rule of law becomes imperative if the accused is to receive a fair trial. The state criminal law should be equally enforced throughout the state. Criminal punishment cannot depend upon "community conscience" or "community standards".

In *Doyle* this court, in speculating on the jury's verdict of guilt in the absence of proof of the crime of murder, said:

"In the complete absence of any evidence that the defendant murdered the decedent, we can account for the verdict only by the feeling that the evidence of the relationship between the defendant and the decedent's wife, and the prejudicial testimony the jury heard, led it to believe that the suspicions in this case were well-founded and sufficient to warrant the defendant's conviction. But mere suspicion, however strong, is not enough and juries are not permitted to base verdicts of conviction on suspicion. . . ." (201 Kan. pp. 488, 489.)

The committee notes on use of this instruction mention that Maryland recognizes in criminal trials the jury is the judge of both the facts and the law. This practice results from constitutional mandate. Only three states have such a provision in their constitutions, Georgia, Indiana and Maryland. See Ga. Const., Art. 1, § 2-201; Md. Const., Art. XV, § 5; and Ind. Const., Art. 1, § 19. We have no similar provision in the Constitution of the State of Kansas. Kansas has in the past recognized a limited exception to the traditional function of a jury in libel actions. (See K. S. A. 21-2406.) The exception no longer exists for the statute was repealed in 1969.

It is argued that in any state, the jury may acquit in complete disregard of the instructions and that the "do what you think is fair" instruction is thus perhaps a more honest statement as to the binding effect of instructions than the conventional instruction, PIK Criminal 51.02. We do not agree.

The argument erroneously equates the jury's raw physical power to disregard the law as laid down in the instructions of the court with the jury's proper function and legal duty to accept the law as given to it by the court. The physical power of a jury to acquit an accused in the face of what appears to be overwhelming evidence of guilt has not been seriously questioned since 1670 when the jurymen who heard the case against William Penn and William Mead flatly refused to return a verdict of guilty for preaching to an unlawful assembly in Gracechurch Street. It is recorded that all jurors in that celebrated case were fined and jailed. Several of them spent months in prison until the case was reviewed on a writ of habeas corpus and the English court delivered the opinion which first recognized and established the raw physical power of English juries to render a verdict of acquittal. (Bushell's Case, 6 Howell's State Trials, 999 [1670].) More recently this raw physical power of a jury was recognized in *State v. Osburn*, 211 Kan. 248, 505 P. 2d 742, when this court determined that special questions may not be submitted to a jury in Kansas in a criminal case. In *Osburn* it was said:

"In view of the differences in our civil and criminal statutes relating to verdicts it is apparent the legislature intended to preserve the *time honored power* of the jury to return a verdict in a criminal prosecution in the teeth of the law and the facts. . . ." (p. 255. Emphasis supplied.)

However, power is one thing and proper function and legal duty is another. The jury's legal duty to act "according to the law" is clearly set forth in the statutory oath administered to every juror. The statute, K. S. A. 1972 Supp. 60-247 (*c*), provides:

"(*c*) *Oath of Jurors.* The jury shall be sworn to well and truly try the matters submitted to them in the case in hearing, and a true verdict give according to the law and the evidence."

It is a jury's legal duty and proper function to accept the law as given in the instructions. In each of the cases now before this court the instructions which were given following Instruction No. 1 set forth rules of law to guide the jurors in their deliberations. They were advised that during the trial the court had ruled upon the admissibility of evidence and the jurors must not concern themselves with these rulings, that the rulings should not indicate to them any opinion of the court as to the facts or the ultimate verdict; that the statements of counsel were intended to help them in understanding the evidence so they might apply the law, but such statements of counsel are not evidence. They were advised to determine the weight and credit to be given the testimony of witnesses. The necessary elements of each crime were set forth in detail, and they were instructed that each of the elements must be proved to establish the charges. The jurors were advised that the burden of proof was upon the state and the law required them to assume the defendant was innocent until they were convinced otherwise. They were advised to evaluate the evidence and determine the innocence or guilt of each defendant entirely in accordance with the instructions. Various other rules of law were given with instructions that they be applied to arrive at a proper verdict.

In considering the instructions as a whole and in their entirety the conflict between Instruction No. 1 and the balance of the instructions becomes apparent. Instruction No. 1 advises the jurors that their guiding principle must be their personal conscientious feelings about what is a fair result in the case and that the judge's statements of the law are secondary aids to be considered or disregarded so long as they arrive at a conscientious determination of a fair result in the case. However, the balance of the instruc-

tions informs the jurors that they must follow rules of law, determine the sufficiency of the evidence to support the elements of the crime, and that their "verdict must be founded entirely upon the evidence admitted and the law as given in these instructions." We believe this conflict in the instructions will result in confusion and injustice in this state if PIK Criminal 51.03 is approved.

Much has been written concerning the present question. See Howe, Juries as Judges of Criminal Law, 52 Harv. L. Rev., p. 582; Bodle, Criminal Law—Indiana Juries in Criminal Cases as Judges of Law Under Constitutional Relic, 24 Notre Dame L. Rev., p. 365; Van Dyke, The Jury as a Political Institution, 16 The Catholic Lawyer, p. 224; Scheflin, Jury Nullification: The Right to Say No, 45 S. Cal. L. Rev., p. 168.

It is universally accepted in this country, with the exception of Georgia, Indiana and Maryland, which are under constitutional mandate, that it is not the proper function or legal right of a jury to determine the law applicable to the case they are hearing. The cases are collected in *Sparf and Hansen v. United States*, 156 U. S. 51, 39 L. Ed. 343, 15 S. Ct. 273, where it is stated:

"The general question as to the duty of the jury to receive the *law* from the court, is not concluded by any direct decision of this court. But it has been often considered by other courts and by judges of high authority, and, where its determination has not been controlled by specific constitutional or statutory provisions expressly empowering the jury to determine both law and facts, the principle by which courts and juries are to be guided in the exercise of their respective functions has become firmly established. . . ." (p. 64.)

Mr. Justice Harlan in delivering the opinion in *Sparf* stated that as to federal criminal trials the jurors "were the exclusive judges of the facts, and that they were to determine—*applying to the facts the principles of law announced by the court*—whether the evidence established the guilt or innocence of the defendants of the charge set out in the indictment." (*Sparf*, supra, p. 106. Emphasis added.) So the function of the jury in a federal case is the same as that universally accepted and applied in state courts absent constitutional mandate to the contrary.

The so-called "do what you think is fair" instruction set forth in PIK Criminal 51.03 is disapproved for use in Kansas. The administration of criminal justice in this state would not be served by approving either the theory or form of such an instruction. The tenor of the instruction militates against our generally accepted law as to the diverse functions of court and jury. The instructions

to the jury should fairly and impartially set forth the law to govern the jury in its deliberations. The giving of an instruction by a court should not depend upon the approval or objection of one party. The instruction which we disapprove stresses the conscience of the jury as a basis for acquittal but fails to properly consider the effect of the instruction as to a conviction. The injustice which could result from adopting such an instruction when an accused is charged with a heinous crime is apparent. The administration of justice cannot be left to community standards or community conscience but must depend upon the protections afforded by the rule of law. The jury must be directed to apply the rules of law to the evidence even though it must do so in the face of public outcry and indignation. Disregard for the principles of established law creates anarchy and destroys the very protections which the law affords an accused. Finally, to permit a jury to disregard the principles of law laid down by a trial court is contrary to the statutory law of this state. (K. S. A. 1972 Supp. 22-3403 [3].)

In disapproving the instruction for use in this state we are in accord with the statements of Mr. Justice Storey who long ago was faced with the present contention. He stated:

". . . My opinion is, that the jury are no more judges of the law in a capital or other criminal case, upon the plea of not guilty, than they are in every civil case, tried upon the general issue. In each of these cases, their verdict, when general, is necessarily compounded of law and of fact; and includes both. In each they must necessarily determine the law, as well as the fact. In each, they have the physical power to disregard the law, as laid down to them by the court. But I deny, that, in any case, civil or criminal, they have the moral right to decide the law according to their own notions, or pleasure. On the contrary, I hold it the most sacred constitutional right of every party accused of a crime, that the jury should respond as to the facts, and the court as to the law. It is the duty of the court to instruct the jury as to the law; and it is the duty of the jury to follow the law; as it is laid down by the court. This is the right of every citizen; and it is his only protection. . . . If the court should err, in laying down the law to the jury, there is an adequate remedy for the injured party, by a motion for a new trial, or a writ of error, as the nature of the jurisdiction of the particular court may require. Every person accused as a criminal has a right to be tried according to the law of the land, the fixed law of the land; and not by the law as a jury may understand it, or choose, from wantonness, or ignorance, or accidental mistake, to interpret it. If I thought, that the jury were the proper judges of the law in criminal cases, I should hold it my duty to abstain from the responsibility of stating the law to them upon any such trial. But believing, as I do, that every citizen has a right to be tried by the law, and according to the law; that it is his privilege and truest shield against oppression and wrong; I feel it my duty to state my views fully and openly on the present

occasion. . . ." (*U. S. v. Battiste*, 2 Sum. 240, 244; 24 Fed. Cas. [No. 14,545], p. 1042 at p. 1043.)

Although it must be conceded that the jurors in a criminal case have the raw physical power to disregard both the rules of law and the evidence in order to acquit a defendant, it is the proper function and duty of a jury to accept the rules of law given to it in the instructions by the court, apply those rules of law in determining what facts are proven and render a verdict based thereon.

The appeals by the state are sustained.