NOT DESIGNATED FOR PUBLICATION

No. 114,743

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ERIC L. TROTTER,
*Appellant*.


MEMORANDUM OPINION


Appeal from Sedgwick District Court; JEFFREY E. GOERING, judge. Opinion filed August 25, 2017. Affirmed.


*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.


*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before POWELL, P.J., ATCHESON, J., and FAIRCHILD, S.J.


PER CURIAM:  A jury sitting in Sedgwick County District Court found Defendant Eric L. Trotter guilty of criminal possession of a firearm by a convicted felon. He has appealed on two grounds:   The district court improperly admitted a brief security video showing him carrying what appears to be a rifle; and the district court instructed the jurors in a way that impermissibly diminished the possibility they would ignore the law and the evidence to find him not guilty. We find no error in those respects and affirm.

1

FACTUAL AND PROCEDURAL HISTORY

Wichita police responded to a "shots fired" call for help from an apartment complex in August 2014 and as part of their investigation reviewed a videotape from a security camera in the lobby of the building. The video showed Trotter and others running through the lobby and out of the building. Trotter carried what looked to be an assault rifle.

About a week later, detectives interviewed another person shown in the video who identified Trotter. Officers then found Trotter, and a detective interviewed him at the police station. Trotter told the detective he had driven to the apartment building with several other people, including a man he knew by the nickname "G." According to Trotter, G grabbed a rifle from the trunk of the car and went into the building. Trotter said he followed and took the rifle from G in the interests of maintaining the peace. Trotter told the detective that while they were in the building, they heard gunshots so they ran outside. Trotter said he carried the gun with him and later threw it away in a grassy area. The gun was never found. Trotter told the detective he didn't fire the rifle.

Everybody agrees that in August 2014 Trotter had been convicted of a predicate felony that would make his possession of a firearm unlawful under K.S.A. 2014 Supp. 21-6304. The State charged Trotter with one count of violating K.S.A. 2014 Supp. 21-6304(a)(3)(B), a severity level 8 nonperson felony.

The jury convicted Trotter as charged in a 2-day trial in June 2015. The district court later sentenced Trotter to serve 17 months in prison and placed him on postrelease supervision for 12 months. Trotter has filed a timely appeal.

2

*Video Clip as Evidence*

As we have indicated, Trotter contends the district court erred in admitting about 4 seconds of the videotape showing him running through the apartment lobby with the rifle. The district court denied Trotter's pretrial motion to exclude the videotape but limited what could be admitted to the brief excerpt. Trotter renewed his objection at trial on the grounds of relevance and undue prejudice, and the district court allowed him a continuing objection to the video clip and the testimony about it. From our perspective, Trotter has properly preserved his objection for appellate review.

On appeal, Trotter contends the video clip was unfairly prejudicial because his quick exit from the building improperly suggested to the jury that he had been involved in a crime and was making a getaway. He says the district court could just as easily have admitted several still images captured from the video—providing the jurors the same relevant information without an impermissibly prejudicial overlay fostered by his running through the lobby.

As a starting point, we recognize that relevant evidence generally should be considered admissible evidence. K.S.A. 60-407(f); *State v. Huddleston*, 298 Kan. 941, 959, 318 P.3d 140 (2014). Here, the relevance of the images on the videotape is undisputed, since the clip shows someone who looks to be Trotter in possession of something that looks to be a rifle. That's highly relevant to a charge of unlawful possession of a firearm. But, as Trotter points out, even relevant evidence may be excluded in certain circumstances. If the probative value of the evidence "is substantially outweighed by" its undue prejudice, the district court has the authority to exclude the evidence. 298 Kan. at 961-62. A district court's ruling weighing probative value against undue prejudice will be reviewed on appeal for abuse of judicial discretion. *State v. Wilson*, 295 Kan. 605, Syl. ¶ 1, 289 P.3d 1082 (2012). A district court exceeds that

discretion if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012).

Here, we see no abuse of that broad discretion. The district court grasped the material facts about the videotape and Trotter's reasons for wanting to exclude it as evidence. And the district court understood the applicable law. We cannot say the ruling admitting a short portion of the videotape was so far afield no other district court would have ruled that way.

As we have said, the video provided highly probative evidence bearing directly on the elements of the charged crime. Conversely, the ostensible prejudice stemmed from an oblique implication Trotter sought to impute to the video. The implication was contrary to Trotter's explanation for why he was running—an explanation the jurors heard through the statement he made to the detective, which was also admitted as evidence. On balance, any unfair prejudice could not be said to substantially outweigh the probative value of the video clip. Although use of still photos captured from the video might have been a preferable alternative, the district court's choice did not come close to an abuse of discretion.

Even if we were mistaken in that assessment, however, any error in admitting the video clip would have been harmless. Trotter effectively confessed to the elements of the crime when he told the detective he took a rifle from G and then carried it around for a substantial period of time. That established Trotter possessed a firearm. And K.S.A. 2014 Supp. 21-6304 grants no dispensation to someone who retains possession of a firearm to prevent its misuse or for some other purportedly benign purpose. During the trial, Trotter

4

did not attempt to deny what he said to the detective. Rather, his lawyer argued that nobody, including Trotter, knew for sure whether the gun was, in fact, a firearm—it might have been a BB gun, a toy, or a replica. The jury apparently was unimpressed by that idea. As to the remaining element of the charge, Trotter stipulated that he been convicted of an unidentified predicate crime bringing him within the prohibition in K.S.A. 2014 Supp. 21-6304. The jurors were so instructed. In short, the case against Trotter was compelling even without the video clip. See *State v. Orange*, No. 108,806, 2014 WL 37688, at *5 (Kan. App. 2014) (unpublished opinion) ("A defendant's confession may be uniquely damning evidence in front of a jury, for it inculpates the defendant from his or her own mouth."). The admission of the video clip, if erroneous, was not the catalyst for the guilty verdict. See *State v. McCullough*, 293 Kan. 970, 983, 270 P.3d 1142 (2012) (A nonconstitutional error may be declared harmless if "there is no reasonable probability that such error affected the outcome of the trial in light of the entire record.").

Trotter has failed to show the admission of the video evidence compromised his right to a fair trial.

*Jury Instruction and Nullification*

For his other point on appeal, Trotter condemns one of the instructions the district court gave for too strongly emphasizing to the jurors that they should base their verdict on the law and the evidence. According to Trotter, the jurors were impermissibly constrained by this part of one of the written instructions: "Your verdict must be founded entirely on the evidence admitted and the law as given in these instructions." He says telling the jurors they "must" stick to the evidence and the law undermines jury nullification. We reject the argument. Even if the instruction were flawed, Trotter cannot demonstrate the requisite degree of harm to warrant reversal of his conviction.

5

Trotter did not object to the instruction in the district court. We, therefore, review for clear error. To grant Trotter relief, we must be firmly convinced the jury would have come to a different result absent the purported defect in the instruction. See K.S.A. 2016 Supp. 22-3414(3) (clear-error standard applicable to jury instructions absent timely objection in district court); *State v. Cameron*, 300 Kan. 384, 388-89, 329 P.3d 1158 (2014) (appellate court must be "firmly convinced" of different result to find clear error). Trotter bears the burden of proving clear error. 300 Kan. at 390.

In a criminal case, jurors have the unchecked power to acquit a defendant in defiance of clear-cut law and overwhelming evidence of guilt—a power commonly known as jury nullification. Although jurors hold that authority, they have no legal right to exercise it. *State v. McClanahan*, 212 Kan. 208, Syl. ¶ 3, 510 P.2d 153 (1973). They actually act in dereliction of their duty as jurors if they flex that power. A criminal defendant, likewise, has no concomitant legal right to jury nullification. But the courts cannot override a not guilty verdict based on nullification. Judge Atcheson recently outlined the history and conceptual underpinnings of jury nullification:

> "In a criminal case, a jury's verdict of not guilty is essentially unimpeachable and irreversible. As a result, a jury can with impunity acquit a defendant in complete disregard of the applicable legal principles, the evidence, or both, thereby allowing an obviously guilty defendant to walk free. A jury's ability to nullify the law and the facts in a criminal case has deep historical roots. Nullification is often held up as a great equalizer allowing ordinary citizens to strike a blow for fundamental fairness against abusive government overreach. In given times and places, that may be true. For example, in perhaps the most celebrated case of nullification, a jury acquitted colonial journalist John Peter Zenger of criminal libel in 1735 for publishing biting commentaries on the royal governor of New York. In 1973, a jury acquitted 28 activists, including several priests and ministers, of criminal charges for seizing draft records and other documents from a federal office building in Camden, New Jersey, to protest the war in Vietnam. But jury nullification has an ignominious side—a side regularly on display in the last century as all-white juries acquitted their racial cohorts of violent crimes against African-Americans

who were not infrequently targeted for having the temerity to seek equal treatment under the law. See generally *State v. McClanahan*, 212 Kan. 208, 510 P.2d 153 (1973); Ilya Somin, "Rethinking jury nullification," The Washington Post, August 7, 2015 (accessed March 30, 2016) (hardcopy on file with Clerk of the Appellate Courts).

"Nullification rests on an unchecked power of the jurors, not a legal right belonging to them or to a defendant. That power actually conflicts with the duty of jurors to follow the law and fairly find the facts to render a "true" verdict. See *State v. Cash*, No. 111,876, 2015 WL 5009649, at *4 (Kan. App. 2015) (unpublished opinion). Jurors in criminal cases are typically sworn "to try the case conscientiously and [to] return a verdict according to the law and the evidence," as are civil jurors. K.S.A. 2015 Supp. 60-247(d); *Cash*, 2015 WL 5009649, at *4." *State v. Stinson*, No. 112,655, 2016 WL 3031216, at *3 (Kan. App. 2016) (unpublished opinion) (Atcheson, J., concurring).

Trotter relies on *State v. Smith-Parker*, 301 Kan. 132, Syl. ¶ 6, 340 P.3d 485 (2014), to support his claim of instructional error. In that case, the court held an instruction informing jurors "[i]f you do not have a reasonable doubt" that the State has proved the elements of the murder charge, "then you will enter a verdict of guilty" impermissibly compromised jury nullification and amounted to clear error. 301 Kan. at 163-65. The instructional directive "will" went too far in mandating the jurors' obligation upon finding the facts and the law required a guilty verdict. 301 Kan. at 164. The court similarly condemned the use of "must" in a reasonable doubt instruction and suggested the word "should" provided properly tempered judicial guidance to jurors. 301 Kan. at 164. In *Smith-Parker*, the court found that multiple trial errors combined with comparatively weak circumstantial evidence on key issues required reversal of the conviction. 301 Kan. at 168. As a result, the court never defined the scope of a remedy tailored to an instructional error impermissibly treading on jury nullification.

The rule in *Smith-Parker* deals with that part of the reasonable doubt instruction telling jurors what to do *after* they have determined the State has proved the defendant guilty. In that respect, the instruction presumably addresses the stage in a jury's deliberations where, if at all, nullification would come into play. Jurors disposed to acquit

7

a defendant because they entertained reasonable factual doubts about his or her guilt wouldn't need to contemplate an impulse to nullify, let alone act on that impulse. So to the extent jury instructions ought to take implicit account of nullification—and *Smith-Parker* says they should—that accounting logically would be done in the reasonable doubt instruction.

But the instruction Trotter assails tells the jurors what to consider in arriving at a verdict—be it guilty or not guilty. In that sense at least, the challenged instruction does not directly implicate jury nullification in the same way as the language found wanting in *Smith-Parker*. And we think the use of "must" in the instruction here didn't create the same real or perceived inhibition of jury nullification. In short, Trotter has not raised a legally valid complaint about the instruction. Other panels of this court have come to the same conclusion in reviewing identical jury instructions. See *State v. Toothman*, No. 114,944, 2017 WL 2494953, at *11 (Kan. App. 2017) (unpublished opinion) (no error in identical instruction; cases cited).

Trotter has not proposed specific alternative language, although he seems to suggest "must" could be replaced with "should." That sort of phrasing would align linguistically with what the *Smith-Parker* court indicated to be acceptable in a reasonable doubt instruction. But Trotter's suggestion would fail of its intended purpose. The use of "should" in the instruction would simply inform jurors they can (but need not) confine the boundaries of their deliberations to the admitted evidence and the stated law, fostering the notion they could investigate on their own by visiting a relevant place or exploring on the internet. Trotter's revision, then, would not be particularly solicitous of jury nullification while simultaneously cultivating activity that would tend to undermine jurors attempting to do their job.

In a more refined bow to *Smith-Parker*, we suppose, a "better" instruction in this case might have informed the jurors this way: "You have a duty to base your verdict only

8

upon the evidence admitted and the law as given in these instructions." The jurors are accurately informed of their duty, but they are not ordered to adhere to that duty. Our refinement, however, does not render the district court's actual instruction, which drew directly from PIK Crim. 4th 68.010, legally incorrect. A given instruction is not erroneous simply because a superior one might be crafted. See *State v. Herbel*, 296 Kan. 1101, 1124, 299 P.3d 292 (2013) (jury instruction, though "not the preferred" one, still considered "legally appropriate"). That's true here.

Even if we have missed the mark and the challenged instruction were legally flawed, Trotter has not demonstrated clear error. That's because the evidence against him was overwhelming between his confession and the video clip, which we have held the district court properly admitted. Accordingly, Trotter cannot reasonably argue that a jury would have reached a different result had the instruction been reworked as either he or we suggest. The proposition of remedy, however, necessarily steps into a paradox. The legal test, of course, considers a jury adhering to its appropriate role in rendering a verdict based on the law and the evidence. But the point Trotter raises presumes a jury set to ignore the law and the evidence. That, after all, is the essence of nullification. And a jury disposed to nullify also presumably would not be deterred by the very instructions it intends to disregard. But paradoxes aside, we are unconvinced that a wording change in the instruction would have unleashed an otherwise nullifying jury to act that way in this case. So we see no clear error.

Affirmed.