IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 116,505

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER BOOTHBY,
*Appellant.*

SYLLABUS BY THE COURT

1.

An erroneous judicial comment made in front of the jury that is not a jury instruction or legal ruling will, from now on, be reviewed as "judicial comment error" under the constitutional harmlessness test from *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). Thus, the State, as the party benefitting from judicial comment error, has the burden to prove beyond a reasonable doubt that the error did not affect the outcome of the trial in light of the entire record, i.e., prove "there is no reasonable possibility that the error affected the verdict." *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011).

2.

Judicial comment error is reviewable on appeal despite the lack of a contemporaneous objection at trial.

3.

The jury instruction, "Your verdict must be founded entirely upon the evidence admitted and the law as given in these instructions," is legally correct and does not prevent a jury from exercising its power of nullification.

1

4.

A district court does not err when it tells a jury to follow the law.

Review of the judgment of the Court of Appeals in an unpublished opinion filed February 9, 2018. Appeal from Stevens District Court; CLINT B. PETERSON, judge. Opinion filed September 6, 2019. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Natalie A. Chalmers*, assistant solicitor general, argued the cause, and *Paul F. Kitzke*, county attorney, and *Derek Schmidt*, attorney general, were with her on the briefs for appellee.

The opinion of the court was delivered by

STEGALL, J.:  A Stevens County jury convicted Christopher Boothby of aggravated assault and criminal threat for pointing a gun at his cousin, Jason Burnett, and threatening to come back when Jason was alone. On appeal, Boothby argues the district court judge committed judicial misconduct when he commented during voir dire about a former case in which Boothby was charged with aggravated battery.

Today, we hold that an erroneous judicial comment made in front of the jury that is not a jury instruction or legal ruling will be reviewed as "judicial comment error" under the *Chapman* constitutional harmlessness test. See *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). That means the State, as the party benefitting from judicial comment error, has the burden to "prove[] beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the

2

entire record, *i.e.*, prove[] there is no reasonable possibility that the error affected the verdict." *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011). We hold the State met this burden and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In October 2014, Eugena (Gena) Burnett and her husband, Jason Burnett, lived with their three children in Hugoton. One day when Gena was home alone with the children, Boothby entered the house and started screaming for Jason. Boothby had let himself in through the front door, which was unlocked. Startled, Gena and the children ran to the living room to see what was happening. Boothby hollered, "Where's Jason at?" Gena said that Jason was at work. Then Boothby walked out and slammed the door.

Gena and Jason had known Boothby since childhood. But, as Gena later testified, the couple's relationship with Boothby had recently "deteriorated." Gena recalled that when Boothby entered her house that day, "He didn't seem like himself. He was just really angry and screaming as loud as he could. It startled my kids. Just kind of had a wild look about him." Boothby's behavior scared Gena, and she immediately called Jason to warn him that Boothby was headed toward his work.

Jason owned a diesel mechanic shop a mile east of Hugoton. When Gena called, Jason was driving back to Hugoton, and an employee was riding with him. They passed Boothby on the highway and decided to wait in town, hoping Boothby would leave the shop. After about 15 minutes, they returned to the shop and found Boothby's truck parked outside. Boothby was alone.

Jason pulled his truck up next to Boothby's, so the driver side windows faced each other. Jason rolled down his window and asked, "What's going on?" Boothby said nothing, pulled his truck forward, and stopped again. Then Jason left his employee in the

3

truck and walked up to Boothby's driver side window. Jason saw a silver revolver in Boothby's lap and said, "What the fuck are you doing with a gun out here, Chris?" Boothby replied that Jason "knew what this is all about." Jason tried to grab the gun twice, but Boothby pulled it away. During this scuffle, Boothby pointed the gun at Jason.

The key dispute at trial was whether Boothby knowingly or accidentally pointed the gun at Jason. Jason testified that he reached into Boothby's truck to grab the gun, but Boothby pulled it away. At that point, Boothby pointed the gun at Jason. As Jason explained, Boothby "never picked [the gun] up and pointed it out the window." Instead, Boothby kept the gun in his lap and tilted it toward Jason's face. Jason was scared and tried to grab the gun again, to no avail.

The scuffle ended when Boothby said, "I'll be back when you are alone," and drove away. After this, Jason was afraid to be alone with Boothby. On cross-examination, Jason admitted that it was normal to see Boothby with a gun—they had even shot guns with their sons at Jason's shop before. But this was the first time that Boothby had pointed a gun at Jason.

The State charged Boothby with aggravated burglary, aggravated assault, and criminal threat. The case went to trial. At the beginning of voir dire—when the district judge was orienting one venire panel to the case—the judge suggested that Boothby was charged with "aggravated battery" in a "former case." The exchange went this way:

> "[THE COURT:] Ladies and gentlemen, this is the part of the trial where we are selecting a jury from all the prospective jurors in the courthouse. And what's going to happen is I have a few questions to ask you generally about the case and then the lawyers will each have an opportunity to question you individually as well.

"So, with that the—this is a criminal case. The defendant, his name is Chris Boothby and he is charged with three crimes, those are *aggravated battery*, aggravated assault, and criminal threat. The alleged victim's name is Eugenia [*sic*] Burnett.

"[DEFENSE COUNSEL]: Your Honor, we have a correction there.

"[PROSECUTOR]: The first charge is aggravated burglary. I think you said aggravated battery.

"THE COURT: Ag burglary. *I think I may have his former case.*

"[PROSECUTOR]: 76 is his case.

"THE COURT: All right. I need to find the correct . . . I believe I saw a Complaint filed in September—

"[PROSECUTOR]: That's from July. That's the information that we have.

"THE COURT: I've got that. . . . All right. Ladies and gentlemen, let me start over. The defendant is charged with aggravated burglary, aggravated assault, and criminal threat. The acts that allegedly occurred that led to these charges occurred on October 16 of 2014 here in Stevens County, Kansas and the alleged victims are Eugenia [*sic*] Burnett and Jason Burnett." (Emphases added.)

Six of the venire members seated in the courtroom during this exchange ended up on the final jury panel.

The jury trial lasted one afternoon, and the State called three witnesses: Gena, Jason, and a detective. After the State rested, the district court granted a judgment of acquittal on the aggravated burglary charge. The defense presented no evidence. Ultimately, the jury convicted Boothby of aggravated assault and criminal threat, and the district court sentenced him to 27 months' imprisonment. Boothby appealed.

Boothby made two arguments in the Court of Appeals. First, Boothby argued the district court judge committed reversible misconduct by informing half of the jurors that he had a former case involving aggravated battery. He argued this error denied him the right to a fair trial because the judge effectively admitted K.S.A. 60-455 evidence of another crime, suggesting he had a violent character. He also claimed the State failed to prove harmlessness beyond a reasonable doubt.

The State did not contest that judicial misconduct occurred. Instead, the State argued Boothby bore the burden to prove the error prejudiced his substantial rights. Further, no prejudice occurred because the judge's remark was attenuated by voir dire, the trial, and the jury instructions, which admonished the jury to decide the case based only on the evidence admitted and to disregard evidence not admitted. Thus, the parties only disputed harmlessness and who bore the burden to prove the error was harmless or not.

The Court of Appeals agreed with the State that "[t]he party alleging judicial misconduct bears the burden of showing prejudice," and Boothby failed to meet this burden. *State v. Boothby*, No. 116,505, 2018 WL 793342, at *2, 4 (Kan. App. 2018) (unpublished opinion). As the panel explained, the judge's misstatement "was one of the earliest remarks the eventual jurors heard, and only six of them were in the courtroom when the district court judge said it." 2018 WL 793342, at *4. Plus, "[a]ny effect the comment might have had was clearly attenuated by the jury selection process, the trial, and the instructions informing jurors of their responsibility to consider only the evidence produced at trial in arriving at their decision." 2018 WL 793342, at *4.

Second, Boothby argued the district court erred when it instructed the jury: "Your verdict must be founded entirely upon the evidence admitted and the law as given in these instructions." He claimed this instruction effectively told the jury that it did not have a right to nullify. The State countered that Boothby misconstrued the instruction's

6

message, but regardless, any error was harmless because "[i]f the jury was going to disregard the court's instructions, it is highly unlikely that the court's instructions prevented it from doing so."

The Court of Appeals held the jury instruction was legally correct and, in the alternative, the instruction was not clearly erroneous. 2018 WL 793342, at *5. The panel emphasized that "[e]ven though jurors can decide to nullify a verdict, jurors are supposed to accept the rules of law given to it in the instructions and apply those rules in determining what verdict to return." 2018 WL 793342, at *5. But also, the panel explained, "Boothby has not convinced us that a jury would have reached a different result if a different instruction had been given. Either way, the jury would have had to disregard the instructions in order to render a nullifying verdict." 2018 WL 793342, at *5.

We granted Boothby's petition to review the Court of Appeals' holdings.

ANALYSIS

*The judge's improper comments during voir dire were harmless because the State proved beyond a reasonable doubt that the error did not affect the trial's outcome.*

The parties do not dispute that the district court judge erred when he said Boothby was charged with "aggravated battery" in a "former case" in front of six of the final jurors or that this error implicates Boothby's constitutional right to a fair trial. So we assume without deciding that error—what the parties call "judicial misconduct"—occurred and move to harmlessness. On that front, Boothby asks us to revisit precedent holding the party *alleging* judicial misconduct bears the burden to show his or her substantial rights were prejudiced. E.g., *State v. Hudgins*, 301 Kan. 629, 637-38, 346 P.3d 1062 (2015). He argues the State, as the party *benefitting* from judicial misconduct, should bear the burden to prove harmlessness beyond a reasonable doubt, and it failed to do so here.

7

More precisely, Boothby asks us to apply recent caselaw that placed the burden to prove constitutional harmlessness on the party benefitting from the error. See *Ward*, 292 Kan. 541, Syl. ¶ 6 (holding that the party benefitting from constitutional error has the burden to "prove[] beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record"); *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016) (quoting *Ward* to hold that "prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record'"). He analogizes the judge's improper comments with prosecutorial error, as in *Sherman*.

"We exercise unlimited review over judicial misconduct claims, and review them in light of the particular facts and circumstances surrounding the allegation." *State v. Walker*, 308 Kan. 409, 419, 421 P.3d 700 (2018). Which party bears the burden to prove harmlessness is a question of law also subject to unlimited review. See *State v. Carapezza*, 293 Kan. 1071, 1075, 272 P.3d 10 (2012) ("[A] determination of the applicable burden of proof is a question of law.").

For decades, we have held: "The party alleging judicial misconduct bears the burden of establishing that misconduct occurred and that the misconduct prejudiced the party's substantial rights." *State v. Miller*, 308 Kan. 1119, 1154, 427 P.3d 907 (2018); see, e.g., *State v. Chism*, 243 Kan. 484, 494, 759 P.2d 105 (1988) ("Reversal [on judicial misconduct grounds] is required only when the appellant has shown the conduct prejudiced his substantial rights."). And we have reviewed judicial comments that are not jury instructions under this generic judicial misconduct standard. See *State v. Cheever*, 306 Kan. 760, 793, 402 P.3d 1126, *cert. denied* 138 S. Ct. 560 (2017). But today, we clarify that an erroneous judicial comment made in front of the jury that is not a jury instruction or legal ruling will, from now on, be reviewed as "judicial comment error"

8

under the *Chapman* constitutional harmlessness test. See *Chapman*, 386 U.S. at 24. That means the party benefitting from judicial comment error has the burden to "prove[] beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, prove[] there is no reasonable possibility that the error affected the verdict," as with prosecutorial error. *Ward*, 292 Kan. at 569; see *Sherman*, 305 Kan. at 109 (styling the same test as whether the error "contributed to the verdict"). Importantly, our holding today is limited to judicial comment error; we do not disturb our existing precedent concerning structural error or other kinds of error traditionally labeled "judicial misconduct." And applying the *Chapman* test, we hold the judicial comment error here was harmless beyond a reasonable doubt.

Boothby claims the judge's improper comments denied him the right to a fair trial, as guaranteed by the Fourteenth Amendment to the United States Constitution. See *State v. Miller*, 274 Kan. 113, 118, 49 P.3d 458 (2002) ("A defendant's right to a fair trial is guaranteed by the Fourteenth Amendment to the United States Constitution."). He labels this error "judicial misconduct."

This case highlights the tension between the "judicial misconduct" standard—which puts the burden on the party alleging error to show prejudice—and the *Chapman*/*Ward* standard—which puts the burden on the party benefitting from the error to show lack of prejudice. After all, the constitutional right to a fair trial cuts to the heart of a judicial misconduct claim. So, Boothby argues, the *Chapman*/*Ward* test should apply to his claim that judicial misconduct denied him the right to a fair trial.

We begin by clarifying the type of error presented here. Until now, we have used the term "judicial misconduct" to loosely describe any judicial error that implicates the right to a fair trial and does not concern a jury instruction or legal ruling. See *Walker*, 308 Kan. at 420 (shredding notes found in the jury room); *State v. Kemble*, 291 Kan. 109,

9

120-21, 238 P.3d 251 (2010) (commenting during a witness' testimony); *State v. Tyler*, 286 Kan. 1087, 1092, 191 P.3d 306 (2008) (communicating ex parte with lay persons); *State v. Gaither*, 283 Kan. 671, 683-84, 156 P.3d 602 (2007) (losing control of temper during voir dire); *State v. Scales*, 261 Kan. 734, 735-36, 933 P.2d 737 (1997) (communicating ex parte with homicide victim's family). But today, we hold that erroneous judicial comments made in front of a jury (that are not jury instructions or legal rulings) will be called "judicial comment error," and we remove this type of error from under the "judicial misconduct" umbrella. Going forward, we will analyze Boothby's claim as "judicial comment error," and to determine the proper harmlessness test, we look to *Sherman* for guidance.

In *Sherman*, we adopted the *Chapman*/*Ward* test to determine whether prosecutorial error that infringes on the constitutional right to a fair trial is harmless. First we boiled the prosecutorial error test down to two steps: error and prejudice. 305 Kan. at 109. Then, we explained, if error is found we must "determine whether the error prejudiced the defendant's due process rights to a fair trial." 305 Kan. at 109. To evaluate prejudice, we followed *Ward* and adopted the *Chapman* constitutional harmlessness test: "prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.'" *Sherman*, 305 Kan. at 109 (quoting *Ward*, 292 Kan. 541, Syl. ¶ 6).

We find the logic behind *Sherman*'s "error and prejudice" rubric for prosecutorial error applies with equal force to judicial comment error. Both the prosecutorial error in *Sherman* and the judicial comment error here are rooted in the same constitutional right to a fair trial and can inflict the same damage to the defendant. An erroneous remark can prejudice the defendant's right to a fair trial whether the prosecutor makes it during closing argument or the judge makes it during voir dire. Indeed, the harm to the defendant is the same, if not worse, when a prejudicial remark is delivered with a judge's

10

authority. See *In re Care & Treatment of Foster*, 280 Kan. 845, 858-59, 127 P.3d 277 (2006) (noting that "Kansas case law is replete with references to the position of trust occupied by a judge in a jury trial" and collecting examples).

Thus we hold that, from now on, appellate courts will employ the familiar "error and prejudice" rubric to claims of judicial comment error. As in *Sherman*, the error inquiry must be conducted on a case-by-case basis, always informed by existing caselaw concerning when judicial comments fall outside a permissible latitude. As for the prejudice prong, judicial comment error will be reviewed under the *Chapman*/*Ward* test. That means judicial comment error is reversible unless the party benefitting from the error—the State—proves beyond a reasonable doubt that the error did not affect the outcome of trial in light of the entire record. See *Sherman*, 305 Kan. at 109; see also *Chapman*, 386 U.S. at 24.

That said, we acknowledge that calling the State a "benefitting" party may seem incongruous or unfair. The State does not have control over a judge's comments; judicial comment error may thwart the State's noble efforts to conduct a fair trial; and laudably, the State may act swiftly to correct the error, as it did here. Even so, the balance of interests weighs in favor of protecting the defendant's fundamental right to a fair trial. See *Sherman*, 305 Kan. at 97-98 ("'The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment.'"); see also *Chapman*, 386 U.S. at 24 ("Certainly error, constitutional error, in illegally admitting highly prejudicial evidence or comments, casts on someone other than the person prejudiced by it a burden to show that it was harmless.").

As a final matter, Boothby admits that he did not object to the judicial comment error at trial. This does not bar review because "[w]hen a defendant's right to a fair trial is alleged to have been violated, the judicial comments are reviewable on appeal despite the lack of a contemporaneous objection." *State v. Brown*, 280 Kan. 65, 70, 118 P.3d 1273

11

(2005); see *State v. Kahler*, 307 Kan. 374, 383, 410 P.3d 105, *cert. granted* 139 S. Ct. 1318 (2018). Moreover, we recognize the potential hazard of objecting to a judge's comment error during trial. Indeed, an attorney seeking to rectify judicial comment error may be "faced with the dilemma of whether to object at all" because "[a] judge who is interfering or intemperate may be further antagonized by counsel's objection." See 1 Griffin, Federal Criminal Appeals § 4:41. We likewise permit defendants to raise prosecutorial error made during voir dire, opening statement, or closing argument for the first time on appeal. See *State v. Sean*, 306 Kan. 963, 974, 399 P.3d 168 (2017).

The State does not contest that Boothby's claim is reviewable on appeal, but it asks us to apply the federal "plain error" standard. Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."); see *United States v. Olano*, 507 U.S. 725, 733-34, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993); *United States v. Mendoza*, 543 F.3d 1186, 1190 (10th Cir. 2008) ("When the party alleging error has not objected in the court below . . . [federal courts] review only for plain error:  '[1] error, [2] that is plain, [3] which affects . . . substantial rights and [4] which seriously affects the fairness, integrity, or public reputation of judicial proceedings.'"). We have not applied a plain error standard when reviewing claims of prosecutorial error and, in keeping with *Sherman*, we decline the State's invitation to adopt the federal plain error standard here.

In sum, erroneous judicial comments made in front of the jury that are not jury instructions or legal rulings will now be reviewed as "judicial comment error." Following *Sherman*'s example, judicial comment error will be analyzed in two steps:  error and prejudice. The prejudice step will be reviewed under the *Chapman/Ward* constitutional harmlessness test. Thus, judicial comment error is reversible unless the State proves beyond a reasonable doubt that the error did not affect the outcome of trial in light of the entire record. Judicial comment error is reviewable on appeal despite the lack of a contemporaneous objection at trial.

Applying these principles, we hold the State proved beyond a reasonable doubt that the judge's comments about Boothby's "aggravated battery" in a "former case" did not affect the outcome of trial in light of the entire record. In context, the judge's misstatements during voir dire were brief; made in passing; and quickly remedied by the diligent efforts of defense counsel and the State. The judge corrected his mistake and informed the venire panel that he was "start[ing] over." Moreover, the comments were attenuated by the rest of voir dire, the evidence at trial, and the jury instructions, which told the jury to "decide this case only on the evidence admitted"; to "disregard any testimony or exhibit which I did not admit into evidence"; and to base the verdict "entirely upon the evidence admitted and the law as given in these instructions." See *Cheever*, 306 Kan. at 794 (holding judge's jury orientation remarks did not prejudice the defendant because "[t]he statements were among the earliest remarks the eventual jurors heard, and any effect they might have had was surely attenuated by the voir dire process, the trial, and the instructions informing jurors of their responsibilities"); see also *State v. Mitchell*, 294 Kan. 469, 482, 275 P.3d 905 (2012) (generally "we presume the jury follows the instructions given"). As a result, we conclude the State met its burden to prove the judicial comment error was harmless.

*The jury instruction stating the "verdict must be founded entirely upon the evidence admitted and the law as given in these instructions" is legally correct.*

Lastly, Boothby argues the district court erred when it instructed the jury: "Your verdict must be founded entirely upon the evidence admitted and the law as given in these instructions." See PIK Crim. 4th 68.010 (2012) (containing identical instruction). Boothby claims this instruction—particularly the word "must"—was legally incorrect because it told the jury that it did not have a right to nullify. Of course, Boothby's argument assumes there is a "right" to jury nullification in the first place. The State

13

challenges this assumption, arguing a right to jury nullification does not exist and, even if it did, the instruction did not say the jury had no right to nullify or interfere with its ability to nullify.

"Generally, an appellate court reviewing a jury instruction challenge must determine whether the issue was preserved; whether the instruction was legally and factually appropriate; and whether any error was harmless." *State v. Barrett*, 309 Kan. 1029, 1036-37, 442 P.3d 492, 498 (2019). Preservation and reversibility are interrelated. When a party fails to object to a jury instruction at trial, we only reverse if the instruction is clearly erroneous, meaning, we must be "'"firmly convinced that the jury would have reached a different verdict had the instruction error not occurred."'" *State v. McLinn*, 307 Kan. 307, 317-18, 409 P.3d 1 (2018). Boothby admits the clear error standard applies because he did not object to the instruction at trial. See 307 Kan. at 317-18; K.S.A. 2018 Supp. 22-3414(3).

To be sure, juries have "the raw physical power" to nullify, or disregard, the law. *State v. McClanahan*, 212 Kan. 208, 217, 510 P.2d 153 (1973). But, as Boothby recognizes, we have long held that an instruction telling the jury that it may nullify is legally erroneous. See 212 Kan. at 215-17. This is because "it is the proper function and duty of a jury to accept the rules of law given to it in the instructions by the court, apply those rules of law in determining what facts are proven and render a verdict based thereon." 212 Kan. at 217; see *State v. Naputi*, 293 Kan. 55, 66, 260 P.3d 86 (2011) ("It is not the role of the jury to rewrite clearly intended legislation, nor is it the role of the courts to instruct the jury that it may ignore the rule of law, no matter how draconian it might be.").

Boothby does not quarrel with this precedent. Instead, he claims there is a right to jury nullification—though he does not say where this right comes from or to whom it belongs—and the challenged instruction wrongly told the jury that it could not nullify. In

14

support, he points to *State v. Smith-Parker*, 301 Kan. 132, 163, 340 P.3d 485 (2014), which held an instruction was legally erroneous that said: "'If you do not have a reasonable doubt from all the evidence that the State has proven murder in the first degree on either or both theories, then you *will* enter a verdict of guilty.'" We reasoned this instruction was erroneous because "[i]t essentially forbade the jury from exercising its power of nullification" and "the wording at issue here—'will'—fl[ies] too close to the sun of directing a verdict for the State." 301 Kan. at 164.

Based on *Smith-Parker*, Boothby argues the challenged instruction likewise forbade the jury from exercising the right of nullification. We disagree for three main reasons: (1) we have not recognized a "right" to jury nullification, and we decline to do so now; (2) the reasonable doubt instruction in *Smith-Parker* is distinguishable from Boothby's instruction; and (3) in the end, Boothby's instruction was legally correct.

First, *Smith-Parker* did not establish a "right" to jury nullification, as Boothby suggests. On the contrary, *Smith-Parker* called jury nullification a "power"—not a "right"—as did past precedent. See 301 Kan. at 164; see also *Naputi*, 293 Kan. at 65 ("the jury's power of nullification"); *McClanahan*, 212 Kan. at 213 ("the jury's raw physical power to disregard the law"); *State v. Osburn*, 211 Kan. 248, 255, 505 P.2d 742 (1973) ("'the jury has the power to bring in a verdict in the teeth of both law and facts'"). Though *Smith-Parker* voiced concern about language directing a verdict for the State, it did not recognize a right to jury nullification. And we decline to recognize such a right today.

Second, the reasonable doubt instruction in *Smith-Parker* is distinguishable from the instruction Boothby challenges. In *Smith-Parker*, we held the reasonable doubt instruction's wording—"you *will* enter a verdict of guilty"—too closely resembled a directed verdict. 301 Kan. at 163-64. But that concern is not presented here, where the challenged instruction does not, even arguably, direct the jury to choose a certain verdict.

15

The State asks us to overrule *Smith-Parker*, but we decline to do so because it is distinguishable from the case before us.

Third, the challenged instruction was legally correct. Again, the instruction stated: "Your verdict must be founded entirely upon the evidence admitted and the law as given in these instructions." This is an accurate—and bedrock—statement of law that mirrors the juror's oath; upholds the role of judge and jury; and most importantly, protects the accused. See K.S.A 2018 Supp. 60-247(d) (requiring jurors to "swear or affirm to . . . return a verdict according to the law and the evidence"); K.S.A. 22-3403(3) ("When the trial is to a jury, questions of law shall be decided by the court and issues of fact shall be determined by the jury."); see also *State v. Cash*, No. 111,876, 2015 WL 5009649, at *4 (Kan. App. 2015) (unpublished opinion). For example, this instruction helps protect the accused from verdicts based on inadmissible evidence, personal bias, or even a coin flip. Indeed, "[o]ur whole system of criminal law is based upon rules of law for the protection of the accused." *McClanahan*, 212 Kan. at 212. Thus, a district court does not err when it tells a jury to follow the law.

No doubt, Boothby advocates for jury nullification because he speculates that the jury would have acquitted him here. But we caution that inviting nullification is playing with fire: "Without restraints being placed upon a jury by our system of jurisprudence the conscience of a jury in a case which causes public outrage might well reflect a lack of rationality rather than a proper display of community conscience." 212 Kan. at 212. In other words, removing the instruction Boothby challenges could do more harm than good.

Finally, we note that telling a jury to follow the law does not prevent the jury from exercising its raw power to nullify. Jury nullification is the "knowing and deliberate rejection of the evidence or refusal to apply the law." Black's Law Dictionary 1026 (11th ed. 2019). Telling a jury to follow the law does not hamper the jury's ability to

16

deliberately disregard that same instruction. After all, "the possibility of jury nullification logically requires, as a necessary precondition, the existence of a mandatory charge from the court." *State v. Robinson*, 303 Kan. 11, 334, 363 P.3d 875 (2015). Thus, we reject the argument that a legally correct jury instruction interferes with the jury's power to nullify.

Affirmed.