NOT DESIGNATED FOR PUBLICATION

No. 126,211

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MATTHEW D. ZAITZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; AMY J. HANLEY, judge. Submitted without oral argument. Opinion filed May 3, 2024. Affirmed.

*Sean P. Randall*, of Kansas Appellate Defender Office, for appellant.

*Jon Simpson*, senior assistant district attorney, *Suzanne Valdez*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before HILL, P.J., SCHROEDER, J., and MARY E. CHRISTOPHER, S.J.

PER CURIAM: After crashing his car and severely injuring a passenger, Matthew D. Zaitz was convicted of driving under the influence and aggravated battery while driving under the influence. Zaitz now timely appeals his convictions, arguing the trial court's failure to sua sponte instruct the jury on the lesser included offense of battery was clearly erroneous. Zaitz further claims the trial judge committed judicial misconduct when she made certain comments during Zaitz' trial counsel's closing argument. Neither of Zaitz' claims are persuasive. We affirm his convictions.

1

In the early morning hours of October 3, 2020, Zaitz picked up Heather Heideman in his car so they could drive around and drink alcohol. Zaitz inadvertently high-centered his car and had to call a tow truck for assistance.

When the tow truck driver arrived, Zaitz was sitting in the driver seat of his car and Heideman was sitting in the passenger seat. During his encounter, the tow truck driver concluded both were under the influence of alcohol based upon their inebriated behavior, the odor of alcohol, and the presence of alcohol containers in Zaitz' car. After successfully freeing Zaitz' car, the tow truck driver instructed Zaitz and Heideman to park the car and if he saw the car moving, he would call the police. As the tow truck driver was leaving, he observed Zaitz get into the driver seat of his car. A short time later, he saw Zaitz' car driving down the road. He called 911.

While speaking with the 911 dispatch operator, the tow truck driver followed Zaitz' car because he was afraid they might cause a fatal accident. Once a Douglas County Sheriff's deputy arrived, the tow truck driver slowed down and stopped following Zaitz' car.

The deputy observed Zaitz' car traveling over the speed limit and followed it for several miles. Despite driving more than 100 miles an hour to catch Zaitz' car, the deputy never caught up to it and eventually lost Zaitz' car.

Sometime after the deputy terminated his pursuit, Zaitz' car traveled off the road into a ditch at a high rate of speed, flipped over, and rolled at least twice until it came to a stop in an adjacent field. Zaitz' car sustained major damage in the crash, including the car's engine being torn from the car.

A sergeant with the Douglas County Sheriff's Office responded to the emergency. Upon his arrival, he saw Zaitz' wrecked car and encountered a severely injured and disoriented Heideman walking on the road. Heideman was confused and unable to identify herself, and her answers were so incoherent the sergeant had to find an identification card in her purse to determine her identity. Paramedics were called to treat Heideman's injuries, and she was transported to the hospital. With the help of additional officers who had arrived on the scene, Zaitz was found badly injured with a broken leg lying in the field approximately 20 to 30 feet away from the car.

While in the ambulance going to the hospital, Zaitz was asked to consent to a blood draw, and he refused. A search warrant was obtained for a blood draw from Zaitz. Testing by the Kansas Bureau of Investigation's (KBI) forensic laboratory reflected Zaitz' blood sample contained an alcohol content of 0.16 grams per 100 milliliters of blood.

Zaitz was charged with one count of aggravated battery while driving under the influence and one count of driving under the influence under two alternative theories: (1) operating a vehicle while his blood alcohol content was .08 or higher or (2) operating a vehicle while under the influence of alcohol to a degree that rendered him incapable of safely driving.

At trial, the tow truck driver testified that before he drove away, he witnessed Zaitz get into the driver seat of the car, but the tow truck driver could not say for certain that Zaitz was the one driving the car when the car was swerving all over the road as he followed it. Heideman testified she was drinking in Zaitz' car before the crash. When asked if Zaitz was drinking, Heideman responded, "I'm not 100 percent sure. I believe he had one." Heideman also recounted the injuries she sustained in the crash: (1) a broken pelvis; (2) two fractures in her back; (3) three broken ribs; (4) a broken left arm; (5) a displaced shoulder; (6) eight fractures in her right wrist; (7) lateral contusions on one eye; (8) a severe concussion; (9) massive whiplash; and (10) extensive bruising. Heideman

3

testified that because of her injuries she had two surgeries. She also explained the concussion affected her ability to remember the day of the crash: "I don't remember a lot. I don't remember the whole night."

When asked whether she became the driver of Zaitz' car after the car was unstuck, Heideman candidly responded, "I don't know. I may have. I'm not sure." Likewise, when asked if she was in the driver seat at the time of the crash, Heideman responded, "I don't know." Similarly, when asked if it was possible she was the operator of the car when it crashed, Heideman answered, "It could be."

The sergeant who had first responded to the scene testified he observed Heideman's "massive injuries to her head and eye" and that it "almost looked as if her eye was coming out of the socket." He further testified Heideman had "what appeared to [him] to be a visibly broken arm." Later at the hospital, a deputy spoke with Heideman, and Heideman said Zaitz had been driving the night before.

Multiple other witnesses testified and physical evidence was admitted at trial, but those details are not necessary given the issues raised in this appeal.

The following colloquy occurred during defense counsel's closing argument:

"[DEFENSE COUNSEL]: Can you imagine if her memory comes back to her and you folks sitting here are not paying attention to what she said when she was here, and this young man suffers the consequences of a huge felony count—
"[PROSECUTOR]: Objection, Your Honor. May we approach.
"[DEFENSE COUNSEL]: Because—
"THE COURT: [Defense counsel], approach.
"(WHEREUPON, the following proceedings were had at the bench by Court and counsel, out of the hearing of the jury.)
"THE COURT: I already know what the objection is.

4

"Don't say the word 'felony' again.

"[DEFENSE COUNSEL]: I'm sorry, Your Honor?

"THE COURT: Do not say the word 'felony' again.

"You've been warned once, don't let it happen again.

"[DEFENSE COUNSEL]: All right.

. . . .

"[DEFENSE COUNSEL]: If you have a reasonable doubt, I suggest that you think very seriously about what this young woman said. We couldn't get on her because she's a hero. She didn't have to do that. She came in here and told the truth to her own disadvantage. All she had to do was go along with what they said and that's it. We can all walk out of here having speculated about what happened out there. Here's the person who witnessed it, lived through it. She's putting up the flags. The flag that says I may have been driving. I may have been responsible for this. She didn't bat an eye in doing that, and we left her alone because otherwise, she could have saved this young man's life.

"[PROSECUTOR]: Judge, I'm going to object again.

"(WHEREUPON, the following proceedings were had at the bench by Court and counsel, out of the hearing of the jury.)

"THE COURT: [Defense counsel], you know the rules as well as I do, you cannot comment on disposition of the case. You cannot comment on the truthfulness of a witness. You cannot use the word 'I' in closing argument and tell the jury what you think and you've done all of the above.

"I am going to suggest that you wrap this up quickly because if you do something again, and again, sir, I know you know the rules, you're a very experienced attorney, I'm going to hold you in contempt. You've got to stop it immediately so argue facts, wrap it up. You're walking a thin line.

"[DEFENSE COUNSEL]: Thank you.

"(WHEREUPON, the bench conference concluded, after which the following proceedings were had with all counsel and the defendant present.)

"[DEFENSE COUNSEL]: I will close my comments at this point and ask you to render a not guilty verdict on both of these counts.

"Thank you very much."

The jury found Zaitz guilty of both counts, and later the trial judge sentenced Zaitz to a controlling term of imprisonment of 52 months.

5

Zaitz asserts only two issues on appeal. First, Zaitz argues the trial court erred in failing to sua sponte instruct the jury on the lesser included offense of battery. Second, Zaitz asserts the trial judge committed judicial misconduct when she made comments to defense counsel during his closing argument. We address each claim below and find they are not persuasive.

*The Trial Court Erred in Failing to Sua Sponte Instruct the Jury on the Lesser Included Offense of Battery, but the Error Was Harmless*

*Standard of Review and Governing Law*

"The multi-step process for reviewing instructional errors is well-known: First, the court decides whether the issue was properly preserved below. Second, the court considers whether the instruction was legally and factually appropriate. Third, upon a finding of error, the court determines whether that error is reversible. Whether the instructional error was preserved will affect the reversibility inquiry in the third step of this analysis. [Citation omitted.]" *State v. Couch*, 317 Kan. 566, 589, 533 P.3d 630 (2023).

We exercise unlimited review over "the legal and factual appropriateness of the instruction sought." *State v. Love*, 305 Kan. 716, 736, 387 P.3d 820 (2017). In determining whether an instruction was factually appropriate, courts must determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction. *State v. Holley*, 313 Kan. 249, 255, 485 P.3d 614 (2021).

K.S.A. 21-5109(b) provides: "Upon prosecution for a crime, the defendant may be convicted of either the crime charged or a lesser included crime, but not both." A

lesser included crime is, among other definitions, "[a] lesser degree of the same crime." K.S.A. 21-5109(b)(1); *Couch*, 317 Kan. at 590. "In cases where there is some evidence which would reasonably justify a conviction of some lesser included crime as provided in subsection (b) of K.S.A. 21-5109, and amendments thereto, the judge shall instruct the jury as to the crime charged and any such lesser included crime." K.S.A. 22-3414(3); *State v. Lowe*, 317 Kan. 713, 718, 538 P.3d 1094 (2023). However, K.S.A. 22-3414(3) further provides:

> "No party may assign as error the giving or failure to give an instruction, including a lesser included crime instruction, unless the party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection unless the instruction or the failure to give an instruction is clearly erroneous."

*Discussion*

A.      *Zaitz did not request the instruction or object to its absence.*

Zaitz concedes he did not request a jury instruction on the lesser included offense or object to its absence. Thus, any error will be reviewed for clear error, and "we must affirm his conviction for aggravated battery . . . unless we are firmly convinced that the jury would have reached a different verdict had any instructional error not occurred." *Couch*, 317 Kan. at 590. Because Zaitz did not properly preserve his instructional challenge, "he bears the burden to firmly convince us the jury would have reached a different verdict had the instructional error not occurred." 317 Kan. at 595.

B.      *The lesser included offense instruction was legally appropriate.*

Zaitz was convicted of aggravated battery under K.S.A. 2020 Supp. 21-5413(b)(3)(A), which criminalizes driving under the influence "when great bodily harm

7

to another person or disfigurement of another person results from such act." Battery, on the other hand, is "[k]nowingly or recklessly causing bodily harm to another person." K.S.A. 2020 Supp. 21-5413(a)(1). Battery is therefore a lesser included offense of aggravated battery because it lacks the additional element that the harm resulted from the defendant driving under the influence and requires a lesser degree of harm. *State v. Malcolm*, No. 122,610, 2021 WL 5501530, at *4-5 (Kan. App. 2021) (unpublished opinion); see *State v. Williams*, 308 Kan. 1439, 1458, 430 P.3d 448 (2018). The lesser included offense instruction for battery was therefore legally appropriate. *Couch*, 317 Kan. at 590. However, "even if a lesser included offense instruction is legally appropriate, it must also be factually appropriate. A trial judge's failure to give a lesser included offense instruction is not error if the instruction falls short on either or both the factual and legal appropriateness requirements." *State v. Lowry*, 317 Kan. 89, 94, 524 P.3d 416 (2023).

### C.    *The lesser included offense instruction was factually appropriate.*

"'A legally appropriate lesser included offense instruction must be given when there is some evidence, viewed in a light most favorable to the defendant, emanating from whatever source and proffered by whichever party, that would reasonably justify the defendant's conviction for that lesser included crime.'" *Couch*, 317 Kan. at 591; see *State v. Haberlein*, 296 Kan. 195, 204, 290 P.3d 640 (2012) (instruction for second-degree intentional murder as lesser included offense of first-degree premeditated murder was factually appropriate because elements are identical, less premeditation). In *Williams*, our Supreme Court relied on *Haberlein* and found simple assault and simple battery were factually appropriate lesser included offense instructions for aggravated assault and aggravated battery because the evidence was sufficient to support a conviction for the greater offenses; thus, the evidence was necessarily sufficient to support convictions of the lesser offenses, making the lesser included offense instructions factually appropriate. *Williams*, 308 Kan. at 1458-59.

Here, the instruction on the lesser included offense of battery was factually appropriate because a conviction for that offense would be upheld against a challenge to the sufficiency of the evidence. The Kansas Supreme Court has defined "'bodily harm as "'any touching of the victim against [the victim's] will, with physical force, in an intentional hostile and aggravated manner.'"'" *Couch*, 317 Kan. at 593. In contrast, "'great bodily harm' [is] "'more than slight, trivial, minor, or moderate harm, [that] does not include mere bruising, which is likely to be sustained by simple battery.'"'" 317 Kan. at 593. Thus, bodily harm is necessarily proven when great bodily harm is proven. Zaitz does not argue, nor could we find, the evidence was insufficient to support his conviction for the greater offense of aggravated battery while driving under the influence. Therefore, sufficient evidence was presented to reasonably justify a conviction for battery, so the lesser included offense instruction for battery was factually appropriate. See *Williams*, 308 Kan. at 1458.

Because the lesser included offense instruction was both legally and factually appropriate, the trial court committed instructional error by failing to sua sponte give the instruction. 308 Kan. at 1458.

D. *We observe no clear error.*

"If a reviewing court determines a district court erred by failing to give an unrequested lesser included offense instruction, its next step is to consider the degree of resulting prejudice by deciding whether it is firmly convinced the jury would have reached a different verdict had this instructional error not occurred." *State v. Berkstresser*, 316 Kan. 597, 598, 520 P.3d 718 (2022).

Because the issue was not preserved below, Zaitz must firmly convince us the jury would have reached a different verdict if the instructional error had not occurred. See *Couch*, 317 Kan. at 595.

9

The evidence of Heideman's injuries overwhelmingly supports a finding she suffered great bodily harm rather than mere bodily harm. See *Williams*, 308 Kan. 1439, Syl. ¶ 7 ("In a case with overwhelming evidence of the elements of the greater offenses, the district court's failure to give lesser included offense instructions was not clearly erroneous."). And Zaitz does not specifically argue the jury would have reached a different verdict had it received the lesser included offense instruction on battery. Rather, he asserts: "[T]he district court's failure to instruct the jury on the lesser-included offense of battery was clearly erroneous, because there is a real *possibility* that the jury, if properly instructed, would have convicted Mr. Zaitz of battery." (Emphasis added.) But this is not the applicable standard for evaluating prejudice under clear error. The instructional error is only reversible if Zaitz firmly convinces us the jury would have reached a different verdict had the instructional error not occurred, and Zaitz has failed to carry his burden. We are convinced, given the overwhelming extent of Heideman's injuries, even with a lesser included instruction on battery, the jury still would have convicted Zaitz of aggravated battery while driving under the influence. The trial court's failure to sua sponte instruct the jury on the lesser included offense of battery was not clearly erroneous.

*There Was No Judicial Misconduct*

Zaitz argues: "The district court committed judicial misconduct when it improperly directed defense counsel during closing argument to 'wrap it up' thereby denying Mr. Zaitz' right to a fair trial." Zaitz "does not complain that the district court improperly sustained the State's objections during his defense attorney's closing arguments or was overly harsh in [her] chastisement of his defense counsel." Zaitz argues the trial judge "crossed the line, and committed misconduct, when [s]he told defense counsel to 'stop it immediately' and 'wrap it up' twice during the second bench conference." Zaitz claims the trial judge's admonition "impermissibly intimidate[d] defense counsel into terminating its case prematurely."

10

*Standard of Review and Governing Law*

"We may consider allegations of judicial misconduct on appeal absent a contemporaneous objection below." *State v. Lemmie*, 311 Kan. 439, 449, 462 P.3d 161 (2020). We exercise unlimited review over allegations of judicial misconduct "'in light of the particular facts and circumstances surrounding the allegation.'" *State v. Boothby*, 310 Kan. 619, 624, 448 P.3d 416 (2019). Zaitz, as the party alleging judicial misconduct, bears the burden of showing misconduct occurred and the misconduct prejudiced his substantial rights. See *State v. Bowser*, 312 Kan. 289, 297, 474 P.3d 744 (2020).

Our Supreme Court has summarized the proper role of a judge in a jury trial as follows:

> "[A] trial judge's role in a jury trial . . . is not to simply moderate the trial. The judge should endeavor to conduct the trial in an atmosphere of impartiality and, therefore, should refrain from remarks or conduct that may injure a party. The judge should be the exemplar of dignity and impartiality, should exercise restraint over personal conduct and statements, should avoid personal predilections, and should control personal emotions. The judge should not permit any person in the courtroom to embroil him or her in conflict. The judge should avoid behavior that tends to demean the proceedings or to undermine the judge's authority. When it becomes necessary during the trial to comment upon the conduct of witnesses, spectators, counsel, or others, or upon the testimony, those comments should be made in a firm, dignified, and restrained manner, avoiding repartee. The judge's comments and rulings should be limited to what is reasonably required for the orderly progress of the trial and should refrain from unnecessary disparagement of persons or issues. In short, our system places an onerous duty on our trial judges, requiring a Herculean effort. [Citation omitted.]" *State v. Miller*, 308 Kan. 1119, 1154-55, 427 P.3d 907 (2018).

*Discussion*

As explained above, Zaitz does not argue the statements of his defense counsel that elicited the admonition from the trial judge were proper. Nor does Zaitz even claim the trial judge's admonition was "overly harsh." It appears Zaitz simply wishes the trial judge had expressed her comments using less intimidating language.

To carry his burden of showing the trial judge engaged in judicial misconduct, Zaitz relies upon our Supreme Court's decision in *State v. Miller*, 274 Kan. 113, 129, 49 P.3d 458 (2002), in which the court found reversible judicial misconduct. Zaitz argues the *Miller* court disapproved of what he contends was a similar judicial comment. In *Miller*, during a bench trial, the trial judge interrupted defense counsel's cross-examination of a witness and stated: "'He is not credible. You think I'm going to believe anything this guy—why don't we move on to some other witness. He is unnecessary for anything. And I'm the finder of fact, I can tell you right now.'" 274 Kan. at 120. The Supreme Court found the trial judge "was interfering with the defense's ability to cross-examine" the witness and "that the trial judge's continued interruptions and characterizations of [the witness] might have resulted in defense counsel proceeding through the examination hastily and terminating it prematurely." 274 Kan. at 119. Zaitz argues the trial judge's challenged comments here had "the same effect of telling defense counsel to 'move onto some other witness' during cross-examination: it impermissibly intimidates defense counsel into terminating its case prematurely."

However, *Miller* is readily distinguishable for two reasons. First, the trial judge's comments in *Miller* are materially different from the trial judge's comments here. There, the trial judge effectively terminated defense counsel's cross-examination of a witness because it determined the witness was not credible. Here, on the other hand, the trial judge was specifically responding to challenged statements by Zaitz' trial counsel that the judge deemed inappropriate and admonished counsel to discontinue making inappropriate

12

comments. And while the trial judge instructed Zaitz' trial counsel to "wrap it up," the context in which her statement was made did not communicate to Zaitz' trial counsel he could not continue a proper closing argument. The instruction was to proceed with wrapping up his closing argument using proper arguments.

Second, and more importantly, the *Miller* court found reversible judicial misconduct based upon the cumulative effect of *far more* than the single comment from which Zaitz attempts to draw a comparison. See 274 Kan. at 129. Here, when examined "'in light of the particular facts and circumstances surrounding'" the trial judge's challenged comments, we find the judge's comments did not rise to the level of judicial misconduct. See *Boothby*, 310 Kan. at 624. In her comments, the trial judge identified the reasons for which she was admonishing Zaitz' trial counsel for statements made in his closing argument immediately before telling him to "wrap it up." The trial judge was managing her courtroom, and her comments were limited to what needed to be said to manage the courtroom and trial in a timely and orderly fashion.

Zaitz has failed to show the trial judge engaged in misconduct; thus, we decline to address whether he was prejudiced.

Affirmed.