NOT DESIGNATED FOR PUBLICATION

No. 127,518

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL STROEDE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GERALD R. KUCKELMAN, judge. Submitted without oral argument. Opinion filed December 12, 2025. Conviction affirmed, sentence vacated, and case remanded with directions.

*Jacob Nowak*, of Kansas Appellate Defender Office, for appellant.

*Ethan C. Zipf-Sigler*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before HILL, P.J., PICKERING and BOLTON FLEMING, JJ.

PER CURIAM: Michael Stroede appeals his conviction for unlawful and felonious escape from custody while under the supervision of the Secretary of Corrections, claiming prosecutorial error. Stroede also appeals his sentence, asserting he did not receive jail time credit for the time he spent incarcerated pending disposition of his case. After a thorough review of the record, we find that, while the prosecutor did err during voir dire, the error was harmless, and we affirm Stroede's conviction. We further find that it is unclear from the record whether Stroede is entitled to jail time credit; thus, we vacate

1

Stroede's sentence and remand for the district court to resentence him and award Stroede jail time credit, if applicable.

FACTUAL AND PROCEDURAL BACKGROUND

On August 30, 2022, Stroede escaped from custody while he was incarcerated at Lansing Correctional Facility (LCF) and in the custody of the Secretary of Corrections. Stroede was housed in a minimum-security facility, which at the time, did not have a secured fence around the perimeter because residents could only leave with a supervisor. A corrections supervisor received information that Stroede had fashioned bedding to resemble a person in his assigned bunk. Corrections officers conducted a search and could not locate Stroede. Stroede had no reason, such as work detail, for being away from the facility. As corrections officers could not locate Stroede, he was declared an escapee on August 30, 2022. An escape flyer was created identifying Stroede.

The next day, LCF corrections officers discovered a GMC dump truck was missing from the facility. Later that day, LCF officers received information that the dump truck had been seen at a gas station in Kansas City, Kansas. LCF officers reviewed security footage and confirmed that Stroede arrived at the gas station in the missing dump truck. After being notified later that day that Stroede had been taken into custody in Kansas City, corrections officers retrieved Stroede from Wyandotte County Jail.

The State charged Stroede with unlawful and felonious escape from custody while incarcerated at a state correctional facility and unauthorized exercise of control over property—the dump truck—worth less than $1,500.

During voir dire, the prosecutor made several statements correctly identifying the jury's role and the State's burden: "The burden is on us as the State to prove beyond a reasonable doubt that he is guilty," and, "Now, if we don't prove to you beyond a

reasonable doubt that he's guilty, then you must find the defendant not guilty. If on the other hand we do prove to you that he's guilty beyond a reasonable doubt, then you should find him guilty."

Later during voir dire, the prosecutor asked a juror, "If you were picked as a juror, . . . will you do your job and find the . . . defendant guilty if the State proves to you beyond a reasonable doubt that he is guilty?" The juror affirmed he would. The prosecutor asked another juror, "[I]f the State proves to you beyond a reasonable doubt that the defendant is guilty, will you do your job as a juror and find him guilty?" The juror affirmed he would. In total, the prosecutor requested and secured verbal commitments from four jurors that they would do their job and find Stroede guilty if the State proved its case.

Moments after the prosecutor asked the jurors to "do your job" and beyond the hearing of the prospective jurors, the district court told the prosecutor, "You are on really dangerous ground. That case was just dismissed 'cause Melton talked about a jury doing their job. You also cannot be getting commitment from these jurors. You need to be asking them about their qualifications to serve and whether they'd be fair." The district court also told the State, "[W]e're gonna get a mistrial if you keep pushing so . . . ." After the court's admonishment of the prosecutor, the prosecutor did not return to this language or line of questioning.

At trial, the State put on seven witnesses who testified to LCF's policies for inmates, procedures for an escaped inmate, and what happened on August 30th. Molly Parks, a unit team manager for LCF, testified that an inmate reported Stroede's possible escape and that Stroede had made his bed look like he was asleep in it. Parks testified that she and other officers checked multiple units at the facility, but Stroede could not be located. Parks verified that Stroede was not on work detail or away from the facility for any authorized reason.

3

Special Agent David Haehl, of the Kansas Department of Corrections Enforcement, Apprehensions, and Investigations Unit, testified Stroede was placed on escaped status, a warrant was issued for Stroede, and a lookout alert was placed in the region with all area law enforcement agencies. Finally, the State called Special Agent James Gift who testified that he retrieved Stroede from Wyandotte County Jail when Stroede was supposed to be at LCF.

Stroede did not present any evidence to contest the charge of unlawful and felonious escape from custody but did contest the charge of theft. Stroede asked the jury only to find him not guilty of theft.

The jury found Stroede guilty of aggravated escape from custody, and acquitted Stroede of theft. At Stroede's sentencing, the district court did not award any jail time credit for the time spent while the case proceeded to trial and sentencing. The court gave no reason why Stroede would not receive any jail time credit. Stroede did not ask for jail time credit at sentencing. The journal entry reflects that the court did not award any jail time credit to Stroede.

ANALYSIS

*The Prosecutor Committed Harmless Error During Voir Dire*

On appeal, Stroede argues the prosecutor committed error during voir dire by telling the jurors that it was their "'job as a juror' to 'find [Stroede] guilty.'" Stroede claims these statements imply that the jury "would fail in its job if it did not convict." The State concedes the prosecutor's comments were error but were harmless.

4

*Preservation*

Claims of prosecutorial error based on comments made during voir dire, opening statements, and closing arguments can be reviewed even without a contemporaneous objection. *State v. J.L.J.*, 318 Kan. 720, 726, 547 P.3d 501 (2024).

*Standard of Review*

To determine whether prosecutorial error has occurred, an appellate court must follow this two-step process: (1) Decide whether the prosecutorial acts "fall outside the wide latitude afforded prosecutors to conduct the State's case" while balancing the State's attempt to obtain a conviction with the defendant's constitutional rights to a fair trial; and (2) if error is found, then determine if the error prejudiced the defendant's due process rights to a fair trial. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

A prosecutor's error is evaluated under the constitutional harmlessness standard, where the "error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, i.e., where there is no reasonable possibility that the error contributed to the verdict.'" 305 Kan. at 109.

*Discussion*

During voir dire, the prosecutor asked prospective members of the jury panel if they would do their job. In *United States v. Young*, 470 U.S. 1, 18, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985), the United States Supreme Court held that a prosecutor erred by "try[ing] to exhort the jury to 'do its job'; that kind of pressure . . . has no place in the administration of criminal justice."

Because the prosecutor committed error, the State has the burden to demonstrate the error is harmless and that "'there is no reasonable possibility that the error contributed to the verdict.'" *Sherman*, 305 Kan. at 109. The inquiry focuses on if the error impacted the verdict; while considerations about the weight of the evidence may impact the analysis, prejudice could exist even "'in a strong case.'" 305 Kan. at 111.

In *J.L.J.*, the prosecutor asked several jurors if they would do their job and find the defendant guilty if the State proved that the defendant committed the crimes beyond a reasonable doubt. 318 Kan. at 726. The jurors responded affirmatively to the prosecutor's questions. 318 Kan. at 726. Further, after asking several members of the jury panel if they would do their job, the prosecutor posed that same question to the entire panel and asked the panel to raise their signs if they agreed to "'do your job.'" 318 Kan. at 726-27.

In that case, the defendant also relied on *State v. Holmes*, No. 125,187, 2023 WL 3140004 (Kan. App. 2023) (unpublished opinion). There, another panel of this court held that in a one-day trial, the prosecutor's statements to the jury in both voir dire and in closing argument that it was their "job" to convict Holmes was reversible error. The *Holmes* panel noted the prosecutor's additional comments about the jury's obligation to convict the defendant: The prosecutor "asked each potential juror to make a commitment to do their jobs and then reminded of them of that commitment at the conclusion of his closing argument." 2023 WL 3140004, at *3.

The *J.L.J.* court distinguished *Holmes* and found harmless error. Unlike in *Holmes*, the prosecutor's improper comments were limited to voir dire and did not occur at any other time during the trial. *J.L.J.*, 318 Kan. at 728. Moreover, the defendant's "right to a fair trial [was] further bolstered by the compelling evidence of his guilt." 318 Kan. at 728. After a review of the strength of the State's evidence, our Supreme Court recognized that the prosecutor had erred by "asking potential jurors during voir dire if they would do their 'job' and convict" the defendant. 318 Kan. at 729. This error, however, was harmless

because the State had met its burden to show there was no reasonable possibility that the error contributed to the verdict.

Likewise, the prosecutor here asked the jurors during voir dire if they would do their job and find the defendant guilty if the State proved its case beyond a reasonable doubt. The prosecutor proceeded to ask other jurors on the panel if they would also "do their job." Recognizing the error, the district court admonished the prosecutor and told the prosecutor to stop with this line of questioning to the jury. After the court admonished the prosecutor, the prosecutor never returned to language requesting the jury panel to do its job. Accordingly, we find that any prejudice produced by this statement was limited by the court's admonishment.

We also note that "the strength of the evidence against the defendant may secondarily impact this analysis one way or the other," but it must not be the "primary focus." *Sherman*, 305 Kan. at 111. Here, the strong evidence also supports a finding that the error was not prejudicial. Stroede was incarcerated at LCF, did not have permission to leave the facility, and was found in Kansas City. The defense counsel's closing argument focused mostly on the second count of theft and solely asked the jury not to find Stroede guilty on the second count. Therefore, based on the strength of the evidence, the improper comments during voir dire did not affect the jury's verdict.

Finally, Stroede argues that the prosecutor's error harmed the jury's power to nullify. A defendant does not have the right to argue jury nullification, although a jury has "'the raw physical power' to nullify, or disregard, the law." *State v. Boothby*, 310 Kan. 619, 630, 448 P.3d 416 (2019); *State v. Genson*, 59 Kan. App. 2d 190, 217, 481 P.3d 137 (2020). And an instruction from a prosecutor to convict is different than a similar instruction from a judge. An instruction from a judge to a jury that the jury must convict "flies 'too close to the sun of directing a verdict for the State,'" whereas the prosecutor's instruction summarizes and emphasizes the State's evidence. *State v. Pruitt*, 310 Kan.

952, 967, 453 P.3d 313 (2019). The prosecutor's request for the jury to do its job did not exert pressure on the jury not to use its power to nullify. Even if it did, Stroede is not entitled to the jury's power to nullify. We affirm Stroede's conviction.

*The Record Is Unclear Whether Stroede Was Entitled to Receive Jail Time Credit While He Was Incarcerated Pending the Disposition of His Case*

K.S.A. 21-6615(a)(1) states, in relevant part:

"In any criminal action in which the defendant is convicted, the judge, if the judge sentences the defendant to confinement, shall direct that for the purpose of computing the defendant's sentence and parole eligibility and conditional release dates thereunder, that such sentence is to be computed from a date, to be specifically designated by the court in the sentencing order of the journal entry of judgment. Such date shall be established to reflect and shall be computed as an allowance for the time that the defendant has spent incarcerated pending the disposition of the defendant's case."

In *State v. Ervin*, 320 Kan. 287, 311-12, 566 P.3d 481 (2025), the Kansas Supreme Court interpreted K.S.A. 21-6615 to entitle a defendant to receive credit for "all time spent incarcerated 'pending the disposition of the defendant's case,'" even if the defendant "received an allowance for some or all that time against a sentence in another case."

Recently, another panel of this court held that a defendant who commits new crimes while serving a prison sentence is not entitled to jail time credit because the defendant is not jailed pending disposition of his or her case; rather, the defendant is jailed because of his or her prior conviction(s). *State v. Martin*, 66 Kan. App. 2d 173, 175-76, 577 P.3d 667 (2025), *petition for rev. filed* October 27, 2025. We agree.

It is unclear from the record whether Stroede is entitled to jail time credit—and, if so, how much jail time credit—for the time he spent in Wyandotte County Jail or

8

possibly the Leavenworth County Jail. When officers retrieved Stroede from Wyandotte County Jail, he was no longer incarcerated for his escape but returned to prison to serve his prior conviction. We therefore reverse Stroede's sentence and remand for the district court to calculate how much jail time credit, if any, Stroede should receive for time spent pending the disposition of his escape case.

Conviction affirmed, sentence vacated, and case remanded with directions.