NOT DESIGNATED FOR PUBLICATION

No. 125,985

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL KEITH GOLDSTEIN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; STACEY DONOVAN, judge. Submitted without oral argument. Opinion filed May 3, 2024. Affirmed.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Brian Deiter*, assistant district attorney, *Suzanne Valdez*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before BRUNS, P.J., GARDNER and ISHERWOOD, JJ.

PER CURIAM: Michael Keith Goldstein appeals his conviction for possession of cocaine, arguing instructional and prosecutorial errors denied him the right to a fair trial. Finding no error, we affirm.

*Factual and Procedural Background*

On March 8, 2020, Goldstein ran a red light and collided with another car. Lawrence police officers responded to the accident. Officer Justin Snipes arrived and saw

that Goldstein had a bloody nose, but Goldstein assured Snipes that he was not injured. Goldstein told Snipes that he was on his way to his mother's house.

While speaking with Goldstein, Snipes also observed several hypodermic needles strewn throughout Goldstein's car. Goldstein told Snipes that the needles were "medical waste from his home," which he planned to take to a hospital for disposal.

Snipes noticed that some needles in Goldstein's car were uncapped, bent, and appeared to be used, and some "had liquids inside of them." It also appeared that the needles had fallen out of two containers: an empty two-liter soda bottle and an "aluminum container that was originally for [an] alcoholic beverage." And some needles had spilled out of these containers onto the passenger side floorboard. There were also "small, clear plastic baggies that had some sort of markings on them" inside of the two-liter bottle.

Snipes observed that Goldstein's speech was "slurred and slow in pace" and his pupils were dilated. He characterized Goldstein's demeanor as "odd" and noted that Goldstein was particularly "focused on . . . drinking his drink from McDonald's after the accident occurred." Because of all these indicators, Snipes suspected Goldstein of driving while under the influence (DUI) of drugs.

Another officer, Jamal Curry, asked Goldstein to perform standardized field sobriety testing, which Goldstein agreed to. Goldstein's performance during a walk and turn test showed six out of eight clues of impairment. He also completed a one-legged standing test, which showed three out of four clues of impairment. After these tests, Curry also suspected Goldstein of DUI and drug use. Curry thus arrested Goldstein and transported him to Lawrence Memorial Hospital for blood testing.

A third officer, Zachary Isaac, recovered 139 used needles and 5 small plastic baggies from Goldstein's car. Isaac noted in his incident report that the baggies were stamped with "blue devils." Isaac was familiar with the symbol and believed it related to narcotics.

A phlebotomist at the hospital, Jenny Messing, collected Goldstein's blood sample and the Kansas Bureau of Investigation (KBI) later tested it. These tests confirmed the presence of cocaine, benzoylecgonine, methylecgonine, and delta-9 carboxy THC in Goldstein's blood. The KBI also tested the needles and containers found in Goldstein's car and confirmed that the residue inside the small plastic baggies was cocaine.

The State first charged Goldstein with felony DUI and possession of drug paraphernalia. The State later amended the complaint to add charges for cocaine possession and failure to obey a traffic light.

The case was tried to a jury in March 2022. The State called eight witnesses: the two occupants of the other vehicle involved in the crash; Snipes, Curry, and Isaac; Messing; and two KBI forensic scientists. Their testimony collectively described the crash, Goldstein's behavior after the crash, the items found in Goldstein's car, the procedures for testing Goldstein's blood and the substances in his car, and the test results.

Goldstein testified that he had found the containers in his garage. He put the two containers of used needles in his car the morning of the accident and planned to transport them to a hospital that day to properly dispose of them as "medical waste." Goldstein denied that he had used any of the needles but agreed that the needles were "used for injectable drugs." He had never seen the plastic baggies that tested positive for cocaine residue, but he admitted that he had used cocaine two days before the accident.

During deliberations, the jury asked the district court whether a "minimum amount" or a "usable quantity" of cocaine was required to prove cocaine possession. After getting input from counsel, the district court directed the jury to consider the jury instructions as written. The jury ultimately acquitted Goldstein of DUI and possession of drug paraphernalia but convicted him of possession of cocaine and failure to obey a traffic light.

The district court sentenced Goldstein to 14 months in prison, suspended that sentence, and granted Goldstein 12 months' probation.

Goldstein timely appeals.

*Did the District Court Err in Instructing the Jury?*

Goldstein first raises a claim of instructional error related to his conviction for possession of cocaine. He claims that the court should have included an instruction defining voluntary acts for this charge.

Our appellate courts apply a multistep process when reviewing this kind of claim:

"First, the court decides whether the issue was properly preserved below. Second, the court considers whether the instruction was legally and factually appropriate. Third, upon a finding of error, the court determines whether that error is reversible. Whether the instructional error was preserved will affect the reversibility inquiry in the third step of this analysis. [Citations omitted.]" *State v. Couch*, 317 Kan. 566, 589, 533 P.3d 630 (2023).

Goldstein concedes that he did not request the instruction he now desires, so we review the failure to give the instruction for clear error. This means that we must affirm

Goldstein's conviction unless we are firmly convinced that the jury would have reached a different verdict had any instructional error not occurred. 317 Kan. at 590.

The State charged Goldstein under K.S.A. 2019 Supp. 21-5706(a) and K.S.A. 2019 Supp. 65-4107(b)(5). K.S.A. 2019 Supp. 21-5706(a) prohibits possession of several types of drugs, including certain stimulants. Our Supreme Court has defined "'possession'" as "having control over a place or thing with knowledge of and the intent to have such control." *State v. Faulkner*, 220 Kan. 153, Syl. ¶ 3, 551 P.2d 1247 (1976).

K.S.A. 2019 Supp. 21-5201(a) states that "[a] person commits a crime only if such person voluntarily engages in conduct, including an act, an omission or possession." Goldstein claims that the district court needed to instruct on this statute's voluntariness requirement because it was legally and factually appropriate, and because his testimony proved he did not "voluntarily" possess cocaine—he had simply found the containers with the cocaine in his garage. Goldstein acknowledges that he moved the containers to his car and drove with them, but Goldstein suggests that these actions are irrelevant because "[o]nce [he] discovered the containers in his garage, he had no way to avoid possessing them."

The State responds that Goldstein did not simply "find" contraband in his garage. The State instead asserts that at the very least, the evidence establishes that Goldstein exercised physical control over the cocaine by moving it from his garage to his car and then driving with it. The State also claims that Goldstein's argument about a voluntary act improperly conflates the actus reus and mens rea elements of his crime. The State argues that Goldstein admitted at trial that he voluntarily exercised physical control over the cocaine, so the remaining question for the jury was whether he had the requisite knowledge and intent to commit the crime of possession. Because Goldstein did not dispute the voluntariness of his actions in taking control over the containers, a voluntary act instruction was not factually appropriate. Alternatively, the State argues that the

5

failure to give the instruction does not amount to clear error, so reversal is not appropriate.

The parties agree, as do we, that an instruction on the voluntariness of Goldstein's act was legally appropriate because it correctly stated K.S.A. 2019 Supp. 21-5201(a). But an instruction based on this statutory language that a "person commits a crime only if such person voluntarily engages in . . . possession" is not factually appropriate here.

In *State v. Dinkel*, 311 Kan. 553, 560, 465 P.3d 166 (2020), our Supreme Court interpreted a voluntary act under K.S.A. 21-5201 to mean "'[a] willed bodily movement.'" See also *State v. Vano*, No. 124,232, 2023 WL 1487801, at *11 (Kan. App.) ("The term 'voluntary' in K.S.A. 21-5201 (a) has the common meaning of having the intent to engage in the underlying conduct, 'not impelled by outside influence.' Black's Law Dictionary 1886 [11th Ed. 2019]."), *rev. denied* 317 Kan. 850 (2023). The evidence presented at Goldstein's trial does not show he was compelled by some person or other influence to possess cocaine. See 2023 WL 1487801, at *11 ("[I]f a person were to take defendant's hand and use it to slap a third person, that would not be a voluntary act on the part of the defendant.").

True, Goldstein testified that he did not know how the needles ended up in his garage and said that a prior housemate may have stowed the needles and baggies in his garage after using them. He also claimed that he never saw the "baggies with blue devils" on them before the day of the accident. But he admitted that he knew the needles were used for illegal drug use. He had also seen that woman use drugs in his home and knew what kind of drugs she used. He described them as "crystalline and some were powder, chunk powder." And despite blaming this woman for leaving the illegal materials in his garage, Goldstein testified that he never saw her use baggies with blue devils on them.

6

And although Goldstein claimed that he did not drink or use drugs on the day of the accident, he admitted that he had snorted cocaine two days before the accident and had eaten marijuana gummies two weeks earlier. He also admitted that he had found the two containers in his garage several months before he loaded them into his car.

These facts establish that Goldstein voluntarily took control of the containers and their contents, including the cocaine residue. Goldstein presented no evidence of an involuntary act and thus fails to establish that a voluntariness instruction would be factually appropriate. See *Vano*, 2023 WL 1487801, at *11 (finding court properly denied voluntary act instruction for aggravated assault and reckless aggravated battery when no evidence showed defendant was "'compelled' by some other person to commit his crimes").

We also agree with the State that Goldstein's claim improperly conflates the actus reus and mens rea elements of his crime. In *Dinkle*, our Supreme Court distinguished between K.S.A. 21-5201(a)'s voluntary act requirement and the relevant culpable mental state:

> "A voluntary act is an intentional bodily movement, *i.e.*, the intention to lift an arm or move a leg in a certain direction—whatever bodily movement is needed to complete the act requirement. In contrast, intentional mental culpability is the conscious desire to engage in conduct of a certain nature or produce a certain result—*i.e.*, to desire injurious movement or a slap or a kick." 311 Kan. at 560.

Although Goldstein characterizes his claim as a voluntariness issue, his argument challenges only the evidence related to his mental culpability. But the district court properly instructed the jury on the offense of possessing cocaine, defining "[p]ossession" as "having joint or exclusive control over an item with knowledge of and the intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." And the jury convicted Goldstein after hearing

7

evidence of his discovery of the containers, actions following this discovery, and admitted use of cocaine and other substances.

Goldstein raises a hypothetical in which a parent finds their child's stash of marijuana in a sock drawer. Goldstein suggests that once discovery occurs, the parent must either take control of the marijuana to dispose of it or knowingly leave the drugs in their home. He then posits that either way the parent is guilty of possession unless the jury receives a voluntary act instruction.

Yet Goldstein's hypothetical and its conclusion ignore basic legal principles. Our Supreme Court has recognized that "when a defendant is in *nonexclusive* possession of the premises on which illegal drugs are found, the mere presence of or access to the drugs, standing alone, is insufficient to demonstrate possession absent other incriminating circumstances." *State v. Rosa*, 304 Kan. 429, 434, 371 P.3d 915 (2016) (citing *State v. Anthony*, 242 Kan. 493, 502, 749 P.2d 37 [1988]). So contrary to Goldstein's argument, the hypothetical parent does not necessarily "possess" marijuana based solely on the discovery of the drug in their home.

A parent who stumbles on drugs in the house is unlike Goldstein, who admitted that he not only discovered the drugs on his premises, but he kept them, moved them, and drove with them after he discovered them in his garage. He also admitted that he believed that the needles were used to inject drugs and that he had recently used cocaine.

Goldstein claimed at trial that he did not know about the baggies and thus implied that he did not know they contained cocaine. But Goldstein does not base his argument about voluntariness on the factual contention that he did not know the containers had cocaine residue in them. He thus waives or abandons the argument. *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021) (An issue not briefed is deemed waived or abandoned.).

We thus find no instructional error and affirm Goldstein's conviction for possession of cocaine.

*Did the Prosecutor's Statements During Voir Dire Deprive Goldstein of a Fair Trial?*

Goldstein next asserts that the prosecutor committed reversible error by stating during voir dire: "[Y]ou'll have to make decisions in this case, but one of those decisions will not be whether the laws are fair or reasonable."

Goldstein did not object to this alleged error while selecting the jury, but we may review a claim of prosecutorial error without a timely objection. *State v. Shields*, 315 Kan. 814, 835, 511 P.3d 931 (2022). We apply a two-step analysis. We first "'decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial.'" 315 Kan. at 835-36. If we find error, we then apply the constitutional harmless-error standard which requires the State to show that "'there is no reasonable possibility that the error contributed to the verdict.'" 315 Kan. at 836.

During jury selection, the State made these comments about the jury's duty to consider the law when deciding this case:

> "There's a benefit of living in the United States is that we have the freedom to disagree with the government, governmental officials, and even the laws of the land, and we constantly hear individuals debate the fairness of our laws but as a juror, you'll have to make decisions in this case, but one of those decisions will not be whether the laws are fair or reasonable.
>
> "As a juror, you'll be required to apply the laws and instructions that are given to you by the Court at the close of trial."

9

The prosecutor asked if any potential juror thought they would be unable to apply the laws as "written and instructed," and none of the jurors responded.

Goldstein asserts that this misstated the law on jury nullification, citing *State v. Smith-Parker*, 301 Kan. 132, 164, 340 P.3d 485 (2014). In that case, our Supreme Court held that jury instructions cannot forbid a jury from exercising its power of nullification. "A judge cannot compel a jury to convict, even if it finds all elements proved beyond a reasonable doubt." 301 Kan. at 164.

The *Smith-Parker* court considered a jury instruction that told the jury: "'If you do not have a reasonable doubt from all the evidence that the State has proven murder in the first degree on either or both theories, then you will enter a verdict of guilty.'" 301 Kan. at 163. Our Supreme Court compared this instruction to one given in an earlier case—*State v. Lovelace*, 227 Kan. 348, 354, 607 P.2d 49 (1980)—which told the jury that if the State proved its case beyond a reasonable doubt, the jury "'must'" convict. The *Smith-Parker* court found that telling a jury that it either "must" or "will" convict would "fly too close to the sun of directing a verdict for the State." 301 Kan. at 164. The court thus rejected use of the words "will" or "must" but approved using the word "should." 301 Kan. at 164. Goldstein claims that the prosecutor's statement here is more akin to the rejected "will" or "must" language and thus constitutes legal error.

But the district court here correctly instructed the jury on its duty to follow the law: "If you have no reasonable doubt as to the truth of each of the claims required to be proven by the State, you *should* find the defendant guilty." (Emphasis added.) This instruction follows the holding in *Smith-Parker* and mirrors the pattern instruction. See PIK Crim. 4th 51.010 (2020 Supp.); see also *State v. Butler*, 307 Kan. 831, 847, 416 P.3d 116 (2018) ("'strongly recommend[ing] the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to instructions'").

10

A prosecutor errs by misstating the law. *State v. Watson*, 313 Kan. 170, 179, 484 P.3d 877 (2021). And Goldstein correctly notes that jurors have "the raw physical power to disregard both the rules of law and the evidence in order to acquit a defendant." *State v. McClanahan*, 212 Kan. 208, Syl. ¶ 3, 510 P.2d 153 (1973).

But our Supreme Court has repeatedly rejected claims like Goldstein's because despite the raw power to nullify, "there is no '"right" to jury nullification.'" *State v. Patterson*, 311 Kan. 59, 68, 455 P.3d 792 (2020) (quoting *State v. Boothby*, 310 Kan. 619, 631, 448 P.3d 416 [2019]). See also *State v. Trotter*, No. 114,743, 2017 WL 3668908, at *3 (Kan. App. 2017) (unpublished opinion) (while "jurors have the unchecked power to acquit a defendant in defiance of clear-cut law and overwhelming evidence of guilt . . . they have no legal right to exercise it").

This court applied this basic principle in rejecting a nearly identical claim in *State v. Taylor*, No. 118,160, 2019 WL 405912, at *5 (Kan. App. 2019) (unpublished opinion). As here, the panel in *Taylor* reviewed a statement made to potential jurors during voir dire for prosecutorial error. The statement advised the jury that "the law that is given to you, you have to follow as instructed by the Judge.'" 2019 WL 405912, at *5. Recognizing the lack of the right to nullification, the panel held that the prosecutor did not misstate the law, concluding, "Since juries have only the power of nullification and not the right to nullification, the prosecutor did not misstate the law when he told the jury it did not have the right to disregard the law." 2019 WL 405912, at *5. We agree with this reasoning and find no error in the prosecutor's statement at Goldstein's trial. We thus have no need to determine whether any error was harmless.

*Does Cumulative Error Warrant Reversal?*

Finally, Goldstein argues that cumulative error denied him the right to a fair trial. But the cumulative error rule does not apply if there are no errors or only a single error.

11

*State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021). Because Goldstein fails to successfully show any trial errors, this rule does not apply.

Affirmed.